UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** Case 22-1345

**Caption [use short title]**

**Motion for:** ERWIN ROSENBERG'S AMENDED THIRD MOTION FOR PERMISSIVE INTERVENTION

Set forth below precise, complete statement of relief sought:
to intervene and deem the proposed intervenor complaint filed.

, Upsolve, Inc. v. Letitia James

**MOVING PARTY:** Erwin Rosenberg, pro se
**OPPOSING PARTY:** Appellant and Appellee

☐ Plaintiff  ☐ Defendant
☐ Appellant/Petitioner  ☐ Appellee/Respondent

**MOVING ATTORNEY:** Erwin Rosenberg pro se
**OPPOSING ATTORNEY:** Mr. Welton and Mr. McNamara
[name of attorney, with firm, address, phone number and e-mail]

Erwin Rosenberg pro se
1000 West Island 1011
Aventura, Florida 33160

305-742-7065 erwinrosenberg@gmail.com

Court- Judge/ Agency appealed from: _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes  ☑ No  If yes, enter date: _____

**Signature of Moving Attorney:**
Erwin Rosenberg pro se   **Date:** 6-27-2023   **Service by:** ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Case 22-1345,

UPSOLVE, INC.

v.

JAMES, LETITIA
_____/

### ERWIN ROSENBERG'S AMENDED THIRD MOTION FOR PERMISSIVE INTERVENTION

A. Introduction

This Court has been considering an appeal from an interlocutory order granting a non-profit's plan to give legal advice to needy debtors on the basis of the First Amendment against New York's lawyer licensing scheme. Appellants have not sought money damages. However, if the Eleventh Amendment arguably is not a bar, then it would be more fair for monetary damages to be assessable against Defendant so that the state governemnt will be better deterred from violating the Constitution.

Although Appellants have not relied upon the Commerce Clause to seek redress, the Commerce Clause is an additional or alternative reason why this Court should affirm the lower court. Erwin Rosenberg has not convinced the lower court or this Court to allow him to make a First Amendment intervenor claim; however, he seeks to intervene with a Commerce Clause claim and seek money damages.

1

"Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought, see <u>Automobile Workers</u>, 382 U.S. at 217, n. 10, 86 S.Ct. 373; Fed. Rule Civ. Proc. 24(b)(1)(a). " <u>Cameron v. EMW Women's Surgical Center, PSC</u>, 142 S. Ct. 1002, 1011-1012 (2022).

B. <u>The U.S. Constitution's Commerce Clause, even without implementing legislation, is a valid cause of action.</u>

Rosenberg makes claims pursuant to the Commerce Clause. The U.S. Constitution's Commerce Clause, even without implementing legislation, is a valid cause of action. See <u>Freeman v. Hewit</u>, 329 US 249, 252 (1946)("In two recent cases we applied the principle that the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. **In short, the Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States**. *<u>Southern Pacific Co. v. Arizona</u>*, 325 U.S. 761; <u>*Morgan v. Virginia*</u>, <u>328 U.S. 373</u>. In so deciding we reaffirmed, upon fullest consideration, the course of adjudication unbroken through the Nation's history. This limitation on State power, as the *Morgan* case so well illustrates, does not merely forbid a State to single out interstate commerce for hostile action. **A State is also precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between States. It is immaterial that local commerce is subjected to a similar encumbrance.** It

2

may commend itself to a State to encourage a pastoral instead of an industrial society. That is its concern and its privilege. But to compare a State's treatment of its local trade with the exertion of its authority against commerce in the national domain is to compare incomparables." (emphases added).

C. The Dormant Commerce Clause Applies to Professional Licensing Statutes/Rules and Enforcement Actions

The Dormant Commerce Clause applies to professional licensing statutes because the movement of persons falls within the protection of the commerce clause. See Locke v. Shore, 634 F. 3d 1185, 1192 (11th Cir. 2011):

> "We first observe that the Dormant Commerce Clause applies to professional licensing statutes like the one at issue in this case. *See, e.g., Kirkpatrick v. Shaw, 70 F.3d 100, 103 (11th Cir.1995)* (per curiam) (analyzing whether Florida's state bar character and fitness requirement violated the Dormant Commerce Clause); *Serv. Mach. & Shipbldg. Corp. v. Edwards, 617 F.2d 70, 73-76 (5th Cir.1980)*[5] (striking city ordinance which required only nonresident itinerant laborers to register their employment as unconstitutional under the Dormant Commerce Clause because "[t]he movement of persons falls within the protection of the commerce clause")."

(footnote omitted).

D. The Eleventh Amendment Does Not Prohibit Rosenberg's Claims Against Defendant

3

Defendant is actually the State of New York. See <u>Kentucky v. Graham</u>, 473 US 159, 165-166 (1985)("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' <u>Monell v. New York City Dept. of Social Services</u>, 436 U. S. 658, 690, n. 55 166*166 (1978)." ).

New York structurally waived the Eleventh Amendment as the plan of the convention in accepting the U.S. Constitution. Text, history, and precedent show the States agreed that their sovereignty would yield so far as is necessary for a national policy that interstate commerce should not feel a pinch from a local law. See <u>TN Wine & Spirits Retailers Association v. Thomas</u>, 139 S. Ct. 2449, 2461 (2019)("More recently, we observed that our dormant Commerce Clause cases reflect a "central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation."' <u>Granholm</u>, 544 U.S. at 472, 125 S.Ct. 1885 (quoting <u>Hughes v. Oklahoma</u>, 441 U.S. 322, 325-326, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979))." See also <u>Camps Newfound/Owatonna, Inc. v. Town of Harrison</u>, 520 US 564, 573-574 (1997)("Even when business activities are purely local, if "`it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.' " <u>Heart of Atlanta</u>, 379 U. S., at 258 (quoting <u>United States v. Women's Sportswear Mfrs. Assn.</u>, 336 U. S. 460, 464 (1949))." ).

4

Since States committed themselves not to thwart the exercise of this federal power, the consent of a State, including to suit, can never be a condition precedent to Congress' enjoyment of it. Unlike gaming activities at issue in <u>Seminole Tribe of Fla. v. Florida</u>, 517 US 44 (1996), which involves goods that, before they travel between States or outside a tribe, are subject to regulation by a sovereign other than the Federal Government (a State or tribe), legal services are not subject to regulation by a sovereign other than the Federal Government (a State or tribe) before they travel between States or outside a tribe. Rather, if anything, the thought and speech are regulated by the U.S. Constitution's First Amendment right to speech before any State regulation may apply. See <u>Torres v. Texas Dept. of Public Safety</u>, 142 S. Ct. 2455, 2466-2467 (2022):

> Text, history, and precedent show the States agreed that their sovereignty would "yield ... so far as is necessary" to national policy to raise and maintain the military. Id., at ___, <u>141 S.Ct., at 2259</u> (internal quotation marks omitted). And because States committed themselves not to "thwart" the exercise of this federal power, "[t]he consent of a State," including to suit, "can never be a condition precedent to [Congress'] enjoyment" of it. Id., at ___, ___, <u>141 S.Ct., at 2255, 2256-2257</u> (internal quotation marks omitted). We consequently hold that, as part of the plan of the Convention, the States waived their immunity under Congress' Article I power "[t]o raise and support Armies" and "provide and maintain a Navy." § 8, cls. 12-13.
>
> . . .
>
> In *Seminole Tribe*, we held that Congress could not rely on its Article I commerce powers to abrogate state sovereign immunity simply because that power was exclusive. <u>517 U.S. at 72, 116 S.Ct. 1114</u>. But later, in *PennEast*, we found that the federal eminent domain power was "`complete in itself,'" and held that was enough to find a waiver of sovereign immunity in the constitutional structure. 594 U. S., at ___, <u>141 S.Ct., at 2263</u>. It thus matters to the analysis that federal regulation of commerce (at issue in *Seminole Tribe*) involves goods that, before they travel between States or outside a tribe, are subject to regulation by a sovereign other than the Federal Government (a State or tribe). That feature of commerce arguably makes the federal regulatory power less than "complete."

5

See also Torres v. Texas Dept. of Public Safety, 142 S. Ct. 2455, 2466-2485 (2022) (Justice THOMAS, with whom Justice ALITO, Justice GORSUCH, and Justice BARRETT join, dissenting)("*Parden* reasoned, not unlike the Court today, that "[t]he sovereign power of the states is necessarily diminished to the extent of the grants of power to the federal government in the Constitution," **and that granting Congress "plenary power to regulate commerce" amounts to a surrender of immunity**. *Id*., at 191, 84 S.Ct. 1207 (internal quotation marks omitted)."

. . .

We repudiated *Parden* and overruled *Union Gas* in *Seminole Tribe*. See 517 U.S. at 66, 116 S.Ct. 1114; see also *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd*., 527 U.S. 666, 683, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (*Seminole Tribe* "expressly repudiate[d]" *Parden*'s theory of plan-of-the-Convention waiver). **Therefore, if *Seminole Tribe* was right, then the Court's decision today is wrong**.")(emphasis added).

Since Torres v. Texas Dept. of Public Safety is the law, *Seminole Tribe*'s repudiation of *Parden* and overruling of *Union Gas* has been implicitly overruled.  Therefore the States' granting Congress plenary power to regulate commerce amounts to a surrender of immunity.

E. The *Rooker-Feldman* Doctrine does nor prohibit Rosenberg's Proposed Intervenor's Claims

6

Since Rosenberg is`presenting here an independent claim complaining about a violation that started when New York began its investigation against Rosenberg's right to practice law, not merely complaining about the enforcement of the New York disbarment order, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in statet court.  See Skinner v. Switzer, 131 S.Ct. 1289, 1297-1298 (2011)("Skinner's litigation, in light of *Exxon*, encounters no *Rooker-Feldman* shoal. "If a federal plaintiff `present[s][an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. 544 U.S., at 292-293, 125 S.Ct. 1517 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (C.A.7 1993); first alteration in original); see In re Smith, 349 Fed.Appx. 12, 18 (C.A.6 2009) (Sutton, J., concurring in part and dissenting in part) (a defendant's federal challenge to the adequacy of state-law procedures for postconviction DNA testing is not within the "limited grasp" of *Rooker-Feldman*).").  Furthermore, Rosenberg filed a notice of appeal of the NY disbarment order to the New York Court of Appeals (Case APL-2022-00126) and Rosenberg has not yet received a decision whether that court asserts jurisdiciton.

F. Conclusion

This Court should grant Erwin Rosenberg's motion because as is evident from the proposed intervenor complaint, his claims or defenses and the main action have a question of law or fact in common and the intervention will not unduly delay or prejudice

7

the adjudication of the rights of the original parties althugh it may encourage Appellants to also make claims for monetary damages against Defendant. This Court should decide that the District Court's order is correct on the basis that the Dormant Commerce Clause protects Appellants' rights and this Court should remand the case back to the District Court for any further proceedings, including accepting as filed Rosenberg's proposed intervenor Complaint.

### **ERWIN ROSENBERG'S PROPOSED INTERVENOR COMPLAINT**

1. This Court has jurisdiction as the claims present a federal question.

2. New York's Appellate Third Department Grievance Committee ("AGC3")'s Mr. Creaser filed a disciplinary complaint against Rosenberg for reciprocal discipline and it contained an October 14, 2021 Affirmation which says:

> "MICHAEL K. CREASER, ESQ., an attorney duly admitted to practice law before the courts of the State of New York, and not a party to the above-entitled proceeding, affirms the following to be true under the penalties of perjury pursuant to CPLR §2106:
> 1. I am a Principal Attorney for the Attorney Grievance Committee for the Third Judicial Department ("petitioner").
> 2. Petitioner is a committee duly authorized by the Rules for Attorney Disciplinary Matters ("Atty. Disc. Rules") (22 NYCRR) Part 1240 and the Rules of the Appellate Division, Third Department ("Court Rules") (22 NYCRR) Part 806 to bring this application.
> 3. This affirmation is based upon information contained in files and records maintained by petitioner.
> 4. Erwin Rosenberg ("respondent") was admitted to practice as an attorney in the State of New York by an order of the Appellate Division, Third Department, in 1998.
> . . .
>
> WHEREFORE, it is respectfully requested that an order be granted pursuant to the Rules for Atty. Disc. Rules (22 NYCRR) §1240.13 and Court Rules (22 NYCRR) §806.13, imposing appropriate discipline upon respondent, Erwin Rosenberg based on his suspension, disbarment and permanent disbarment from the practice of law in the State of Florida, and together with such other further and different

8

relief as this Court deems just and proper."

3. New York's Appellate Third Department ("AD3") acts in an non-adjudicative enforcement capacity as to its control of AGC3's enforcement of disciplinary rules and the AD3 acts in an adjudicative capacity when it decides disciplinary cases. See <u>Supreme Court of Va. v. Consumers Union of United States, Inc</u>., 446 US 719, 723-724 (1980):

> The courts of Virginia, including the Supreme Court, thus play an adjudicative role in enforcing the Bar Code similar to their function in enforcing any statute adopted by the Virginia Legislature and similar or identical to the role they would play had the Bar Code been adopted by the state legislature.
>
> The Virginia Court, however, has additional enforcement power. As we have said, it asserts inherent power to discipline attorneys.

4, That investigation constituted an infringement of Erwin Rosenberg's right to participate in an area of trade free from interference by the States.

5. The same is true with regard to any of New Yorks enforcement of the lawyer licensing scheme.

6. The Supreme Court of Florida ordered a suspension of Rosenberg's license to practice law in Florida (<u>The Florida Bar v. Rosenberg</u>, 169 So. 3d 1155 (2015)..

7. The suspension was the basis of a disbarment which was the basis of a permanent disbarment which led to an order prohibiting pro se filings in the Supreme Court of Florida.

8. A reciprocal disbarment was ordered in New York (<u>Matter of Rosenberg</u>, 202 AD 3d 1271, 161 NYS 3d 520, (3rd Appellate Div 2022) and in Masssachusetts (<u>In the Matter of Rosenberg</u>, 491 Mass. 1027 (Mass. 2023),

9. The New York ary order continue to harm Rosenberg in that it harmshis ability to

9

work as a lawyer in New York.

COUNT 1: CLAIM PURSUANT TO THE U.S. CONSTITUTION'S COMMERCE CLAUSE AGAINST DEFENDANT FOR A DECLARATORY JUDGMENT THAT THE LAWYER LICENSING SCHEME IS UNCONSTITUTIONAL AND FOR AN INJUNCTION PROHIBITING ITS ENFORCEMENT

10. Paragraghs 1-9 are re-alleged.

11. The burden imposed on commerce by the lawyer licensing scheme has a proteccionist effect as indicated by the fact that it is excessive in relation to the putative local benefits particularly since the local interests involved could be promoted as well with lesser impact on interstate activities. See Pike v. Bruce Church, Inc., 397 US 137, 142 (1970)("Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U. S. 440, 443. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.").

12. New York's interest in the licensing of legal services market participants is not important; laws, rules and cases are readily found online, zoom is used in New York by Courts especially since the Covid pandemic, and e-filing is common.

13. New York can promote its local interests of ethics, professionalism and capacity

as well without a material impact on interstate activities by, for examply, posting on a website ratings and news about legal services practioners as to their ethics, professionalism and educational background.

14. Furthermore, in general, the civil and criminal laws already restrain any material wrongful behavior by any legal service market participants; a legal services provider who is negligent (whether by not paying attention or by not acquiering sufficient education or experience prior to performing work for a client) can be sued for negligence or for breach of contract.

15. State entities lack personal immunities. See <u>Lewis v. Clarke</u>, 137 S.Ct. 1285, 1292 (2017)(" Defendants in an official-capacity action may assert sovereign immunity. <u>Graham</u>, 473 U.S., at 167, 105 S.Ct. 3099. An officer in an individual-capacity action, on the other hand, may be able to assert personal immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances. <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 342-344, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009").

16. AGC3 caused damages to Rosenberg by its disciplinary enforcement against Rosenberg interfering with his right to engage in interstate commerce free of States' interference.

17. There is a traditional presumption in favor of any appropriate relief for violation of a federal right. See <u>Barnes v. Gorman</u>, 536 US 181, 185 (2002).

18. Wherefore Erwin Rosenberg sues Defendant under the U.S. Constitution's Commerce Clause for a declaratory judgment that the New York lawyer licensing scheme is unconstitutional and for an injunction prohibiting its enforcement.

<u>COUNT 2: CLAIM PURSUANT TO THE U.S. CONSTITUTION'S COMMERCE CLAUSE AGAINST DEFENDANT FOR COMPENSATORY AND PUNITIVE DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE U.S. CONSTITUTION'S COMMERCE CLAUSE</u>

19.  Paragraghs 1-17 are re-alleged.

20.  Rosenberg has suffered damages in the form of loss of enjoyment of a Constitutional right, lost business opportunities and damage to his reputation by New York's interference with Rosenberg's right to engage in interstate commerce practicing law free of State's' interference.

21.  Wherefore Rosenberg sues Defendant pursuant to the U.S. Constitution's Commerce Clause for compensatory and punitive damages for violation of the U.S. Constitution's Commerce Clause.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify I served a copy hereof by filing with the CM/ECF system on June 27, 2023.

Respectfully Submitted,

<u>/s// Erwin Rosenberg</u>
Erwin Rosenberg
1000 West Island Blvd. 1011
Aventura, Florida 33160
Tel 786-299-2789
erwinrosenberg@gmail.com