

INSTITUTE FOR JUSTICE

February 14, 2024

**Via CM/ECF**
Hon. Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

     RE:    *Upsolve, Inc. v. James*
                Case No. 22-1345-cv
                28(j) Letter

Dear Ms. Wolfe:

      Pursuant to Federal Rule of Appellate Procedure 28(j), I write to draw the Court's attention to a recent order from the Supreme Court of South Carolina, *In Re: South Carolina NAACP Housing Advocate Program, et al.*, Case No. 2023-001608 (Feb. 8, 2023), attached. In the order, the court unanimously approved a volunteer program that is almost identical to Appellee Upsolve's American Justice Movement. *Compare* Appellees' Br. at 5–10, *with* Slip. op. at 4–5. The court's opinion explains why, as a matter of South Carolina law, a program in which trained volunteers offer basic legal advice is permissible under the state's unauthorized-practice-of-law rules. Slip Op. at 13–17.

      The NAACP's South Carolina program seeks to advise people facing eviction lawsuits rather than consumer debt lawsuits, but the programs are otherwise essentially identical. Both programs seek to reduce the extent to which unrepresented people default for want of basic legal advice. *Compare* Slip. Op. at 4, *with* Appellees' Br. at 3–5. Both programs seek to train and supervise nonlawyer volunteers to provide limited advice to people facing lawsuits (evictions in South Carolina; consumer-debt lawsuits here) to help them better understand how to exercise their rights and access the courts. *Compare* Slip op. at 5, *with* J.A. 24. Both programs train their volunteers, require them to adhere to a training manual, and prohibit them from accepting payment for their advice. *Compare* Slip op. at 5–7, *with* (J.A. 26, 42–59). And both programs recognize that the best advice will often be a referral to a state-licensed attorney. *Compare* Slip op. at 15, *with* J.A. 179–80 *and* Appellees Br. at 7–9. But in South Carolina, this sort of advice from trained

volunteers is legal; in New York, but for the district court's ongoing preliminary injunction, it would be banned.

One issue in this appeal is whether New York is burdening more speech than is necessary to protect the public. *See* Appellees Br. at 48–51. The South Carolina Supreme Court's decision is powerful evidence that New York is doing exactly that.

I thank the Court for its attention.

> Sincerely,
>
> /s/ Brian A. Morris
> Robert J. McNamara
> Brian A. Morris
> INSTITUTE FOR JUSTICE
> 901 North Glebe Road, Suite 900
> Arlington, Virginia 22203
> (703) 682-9320
>
> *Counsel for Plaintiffs-Appellees*

cc (by ECF):

All Counsel

## Certificate of Compliance

This letter brief complies with the type-volume limitation of Fed. R. App. P. 28(j) as it contains 350 words.

Dated: February 14, 2024                /s/ Brian A. Morris
                                        Brian A. Morris

                                        *Attorney for Plaintiffs-Appellees*

2

# The Supreme Court of South Carolina

In Re: South Carolina NAACP Housing Advocate Program; the South Carolina State Conference of the NAACP; Marvin Neal; Robynne Campbell; De'Ontary Winchester, Petitioners.

Appellate Case No. 2023-001608

ORDER

Petitioners in this matter include the South Carolina State Conference of the NAACP; the South Carolina Housing Advocate Program ("Housing Program"), which was created by the State Conference; and three prospective nonlawyer volunteers for the Housing Program. They seek authorization from this Court allowing certified Housing Program nonlawyer volunteers ("Advocates") to provide free, limited assistance to tenants facing eviction in South Carolina magistrates courts. Specifically, petitioners seek a declaratory judgment in this Court's original jurisdiction that their proposed activities do not constitute the unauthorized practice of law. *In re Unauthorized Prac. of L. Rules Proposed by S.C. Bar*, 309 S.C. 304, 307, 422 S.E.2d 123, 125 (1992) (urging "any interested individual" who becomes aware of conduct that may constitute the unauthorized practice of law "to bring a declaratory judgment action in this Court's original jurisdiction to determine the validity of the conduct"); *see* S.C. Code Ann. § 40-5-

310 (2009) ("No person may either practice law or solicit the legal cause of another person or entity in this State unless he is enrolled as a member of the South Carolina Bar pursuant to applicable court rules, or otherwise authorized to perform prescribed legal activities by action of the Supreme Court of South Carolina."). Petitioners also request that the Court expedite the proceedings and grant them emergency temporary authorization to implement the Housing Program while the Court reviews the merits of their petition.

After a preliminary review of the petition and the proposed Housing Program documents, the Court informed petitioners that it was considering authorizing the Program on a provisional basis or as a pilot program. The Court requested additional information from petitioners and requested they file a supplement to their petition addressing two issues.

First, this Court inquired as to whether petitioners would agree to share data and performance metrics they intend to collect so the Court could evaluate the Housing Program and the conduct of its Advocates. Second, petitioners were asked to provide additional information about how nonlawyer volunteers for the Housing Program would qualify to be certified as Advocates, the nature of the training they would be provided, and how the Advocates would be supervised.

In their supplement, petitioners summarized the data they intend to collect and agreed to share various data and performance metrics with this Court, South

Carolina Court Administration, and the South Carolina Access to Justice Commission. Petitioners also provided information about the nature of the training, the certification process, and lawyer supervision of the nonlawyer Advocates.

For the reasons set forth below, we grant the petition, dispense with further briefing, and issue this order authorizing petitioners to implement the Housing Program on a provisional, pilot basis. Petitioners' motion to expedite is denied as moot.[1]

**Facts**

Petitioners argue in their petition and accompanying memorandum that there is a critical need to assist persons facing eviction proceedings in South Carolina magistrates courts, and they have created the Housing Program to meet this need. To support their argument that free, limited nonlawyer assistance is needed, petitioners cite to the 2021 report of the South Carolina Access to Justice Commission, which indicates that more than 99% of defendants in eviction cases are not represented by lawyers in the proceedings.[2]

---

[1] Dr. Rebecca L. Sandefur and other advocates have filed a request for permission to file an *amici curiae* brief in this matter. The request is granted and the brief is accepted as filed.

[2] Elizabeth Chambliss, Will Dillard, & Hannah Honeycutt, *Measuring South Carolina's Justice Gap*, S.C. Access to Justice Commission (2021), https://static1.squarespace.com/static/5d38a7143b6514000155e5a9/t/61966d9c8c9

Petitioners also cite a February 2023 South Carolina Statewide Civil Legal Needs Assessment, which argues:

> Eviction defense is the most pressing area of need in the housing area, and more so as the pandemic continued through 2021 and 2022. Private practitioners rarely take these cases, and legal services providers cannot handle them all. Many tenants are unrepresented in court or don't appear in court at all.

Bruce Rich et al., *South Carolina Legal Needs Assessment 2022*, Univ. N.C. Greensboro Center for Housing & Community Studies, at 5 (Feb. 21. 2023), https://static1.squarespace.com/static/5d38a7143b6514000155e5a9/t/64184e6db3775a6576cbffef/1679314547803/CHCS+-+SC+LNA+-+Final+Report++-+February+21%2C+2023+-+with+Appendices+-+03-17-23.pdf. Petitioners argue the Assessment revealed that tenants facing eviction do not have resources to pay for lawyers, and there not enough *pro bono* lawyers in South Carolina to provide legal assistance to them. Petitioners maintain tenants' lack of knowledge about their legal rights under the Residential Landlord and Tenant Act frequently causes them to default without having a chance to appear in court and exercise any of their statutory rights, which places extraordinary strain on the tenants, their families, and community resources.

According to petitioners, the Housing Program is intended to allow

---

d1d70998fbe4d/1637248442271/2021+Justice+Gap+Report+-+updated+11.18.21.pdf.

nonlawyer volunteers to provide basic, limited assistance to tenants facing eviction so those tenants may better understand how to exercise their rights and access South Carolina courts. Tenants must give their informed consent, confirmed in writing on standardized Housing Program-approved forms, in order to be eligible for the Program.

Tenants will be specifically advised that the Housing Program Advocates are not lawyers and, according to the petition, Advocates' must strictly limit the information they provide to tenants and they may only:

> (1) confirm that the tenant they are helping has an eviction action filed against them; (2) advise the tenant that they should request a hearing and, based on the text of the eviction notice and checking relevant court records, explain how and when to do so; and (3) provide the tenant with narrow additional advice about the hearing by flagging common defenses, primarily pertaining to notice, that the tenant might be able to raise.

Advocates will be instructed to avoid conflicts of interest, abide by confidentiality rules, and refrain from revealing any information about the tenant's situation except to Housing Program staff. Advocates are strictly prohibited from requesting or accepting any payment or gratuity from a tenant or a tenant's family or friends. Furthermore, the Program Manual instructs each Advocate to refer tenants to legal service providers whenever the Advocate encounters issues that are beyond the scope of the Housing Program, such as when the tenant may have a counterclaim, if a tenant does not have a written lease, if the tenant receives a

housing voucher or lives in public housing, or whenever the tenant seeks information in excess of what is permitted under the Housing Program.

The Manual explicitly warns Advocates that if they fail to abide by the requirements and limits of the Manual and other training, that they will be immediately suspended as Advocates. Advocates are also cautioned that they may be subject to prosecution for violating the statutory prohibition on the unauthorized practice of law if they exceed these limits, and they could also be subject to liability under other criminal statutes and/or liable in civil actions.

In their supplement to the petition, petitioners summarize the educational component of the program, which is a prerequisite for nonlawyer volunteers to be certified as Advocates. To become certified Advocates, nonlawyer volunteers must complete a training program with four modules that last between two to four hours each, for a total of twelve hours of training. Volunteers must pass a test after each module and also pass a cumulative final examination to become certified as Advocates and provide assistance.

According to petitioners, Module 1 includes an overview of the Advocates' responsibilities and covers in detail a code of conduct that must be followed, together with instruction concerning their obligations to tenants. Advocates will review the relevant Rules of Professional Conduct, discuss the limitations on the information they may provide, and evaluate sample problems.

Module 2 covers general eviction law and the eviction process in magistrates court in South Carolina, including lease and notice requirements, as well as statutory grounds for eviction.

Module 3 includes instruction on the substantive guidance that Advocates will be trained to provide to tenants. Petitioners state Advocates will be trained to determine when a tenant was served with a rule to vacate or show cause and whether notice was proper, review sample scripts advising tenants about requesting a hearing and any specific notice defenses that might be available, and practice providing this information and responding to potential questions.

Module 4 covers mandatory referrals to legal service providers, which as noted previously, must be made whenever a tenant has questions or seeks information or assistance beyond what the Housing Program permits.

Petitioners indicate in the supplement to their petition that they will continuously review the modules and testing to ensure the efficacy of their assessments and training and periodically update the training manual, modules, and assessments. They will conduct user-testing and survey Advocates to ensure concepts are taught effectively.

With respect to lawyer supervision of Advocates, petitioners state a lawyer affiliated with the NAACP will conduct evaluation sessions with certified Advocates to review the information they are providing, discuss reported tenant

concerns, provide additional guidance, and ensure Advocates are complying with all program requirements. Petitioners maintain Advocates "will work closely with lawyers affiliated with the South Carolina NAACP and its partners to ensure that any questions Advocates have are promptly addressed."

In their supplement to the petition, petitioners indicate they will collect various data to determine the efficacy of the Program, and they have agreed to share information with the Court. Specifically, petitioners indicate they will collect and share information concerning:

- the number of trained Advocates and their identities;

- the number of tenants who contact the Program for assistance (as well as self-reported demographic information about those tenants);

- the number of tenants the Program assists;

- the number of tenants the Program is unable to assist (e.g. because they have already been evicted);

- the number of tenants referred to legal services;

- the number of hearings requested; and

- the counties in which the Program provides assistance.

Petitioners indicate they will also track outcomes through follow-up with tenants who have received assistance regarding: (1) whether tenants who were referred to outside legal service providers actually received assistance from those providers; (2) whether tenants requested a hearing; and (3) the status of particular

eviction actions. Petitioners indicate they will, to the extent possible, verify outcome-related information tenants provide by comparing that information to the Public Index and records of daily eviction filings across South Carolina. Petitioners intend to work with various partners, such as the NMRS Center on Professionalism and the USC Law School, to conduct a comparative assessment of the program to determine how successful the program is in comparison to other control groups who received no assistance or limited scope assistance from an attorney.

**The Practice of Law in South Carolina**

"The South Carolina Constitution provides the Supreme Court with the duty to regulate the practice of law in the state." *Doe v. McMaster*, 355 S.C. 306, 311, 585 S.E.2d 773, 775 (2003) (citing S.C. Const. art. V, § 4). "South Carolina, like other jurisdictions, limits the practice of law to licensed attorneys." *Brown v. Coe*, 365 S.C. 137, 139, 616 S.E.2d 705, 706 (2005); *see* Rule 5.5, RPC, Rule 407, SCACR (providing that lawyers who are not licensed in this jurisdiction may not practice law in South Carolina except as provided in Rule 5.5 or in other court rules).

The purpose of prohibiting the unauthorized practice of law is to protect the public from incompetent, unethical, or irresponsible representations. *Brown v. Coe*, 365 S.C. at 139, 616 S.E.2d at 706; *In re Anonymous Applicant for Admission*

to *S.C. Bar*, 437 S.C. 1, 8, 875 S.E.2d 618, 622 (2022); *Renaissance Enters., Inc. v. Summit Teleservices, Inc.*, 334 S.C. 649, 652, 515 S.E.2d 257, 258 (1999). The Court has emphasized that:

> Our duty to regulate the legal profession is not for the purpose of creating a monopoly for lawyers, or for their economic protection; instead, it is to protect the public from the potentially severe economic and emotional consequences which may flow from the erroneous preparation of legal documents or the inaccurate legal advice given by persons untrained in the law. Indeed, protection of the public is our "paramount concern" in these matters.

*Linder v. Ins. Claims Consultants, Inc.*, 348 S.C. 477, 486–87, 560 S.E.2d 612, 617 (2002) (quoting *State v. Buyers Serv. Co., Inc.*, 292 S.C. 426, 434, 357 S.E.2d 15, 19 (1987) (internal citation omitted)).

The General Assembly has enacted a statutory prohibition on the unauthorized practice of law that prohibits any person who is not "enrolled as a member of the South Carolina Bar pursuant to applicable court rules" from practicing law in the state. § 40-5-310. However, the statute contains an important exception for persons who may be "authorized to perform prescribed legal activities by action of the Supreme Court of South Carolina," and provides that the type of conduct in question must have been previously defined as the unauthorized practice of law by this Court in order for criminal charges to be filed. *Id.*

With respect to determining whether certain conduct or activity constitutes the unauthorized practice of law, this Court has held "it is neither practicable nor

wise" to promulgate a single, comprehensive definition of the practice of law through the enactment of a set of court rules. *In re Unauthorized*, 309 S.C. at 305, 422 S.E.2d at 124. Instead, the Court has held "the better course is to decide what is and what is not the unauthorized practice of law in the context of an actual case or controversy," and the Court has urged "any interested individual who becomes aware of such conduct to bring a declaratory judgment action in this Court's original jurisdiction to determine the validity of the conduct. We hope by this provision to strike a proper balance between the legal profession and other professionals which will ensure the public's protection from the harms caused by the unauthorized practice of law." *Id.* at 305, 307, 422 S.E.2d at 125.

Through appellate decisions and the promulgation of various court rules, this Court has determined certain nonlawyers may engage in various, limited activities without engaging in the unauthorized practice of law. *E.g., In re Unauthorized*, 309 S.C. at 307, 422 S.E.2d at 125 (holding "CPAs do not engage in the unauthorized practice of law when they render professional assistance, including compensated representation before agencies and the Probate Court," and that "police officers may prosecute traffic offenses in magistrate's court and in municipal court"); Rule 21, SCRMC (permitting a business to be represented by a non-lawyer officer, agent, or employee in magistrates court in South Carolina when certain conditions are met).

In some instances, the Court has authorized nonlawyers to engage in certain activities only under the supervision of a lawyer. For example, this Court has held that, while a nonlawyer abstractor may examine public records as part of a title search, providing an opinion as to the content of the records would constitute the unauthorized practice of law. *Ex parte Watson*, 356 S.C. 432, 436, 589 S.E.2d 760, 762 (2003). However, "if a licensed attorney reviews the title abstractor's report and vouches for its legal sufficiency by signing the report, title abstractors would not be engaged in the unauthorized practice of law." *Id.*; *Doe v. McMaster*, 355 S.C. 306, 313, 585 S.E.2d 773, 776 (2003) ("The title search and subsequent preparation of related documentation is permissible only when a licensed attorney supervises the process.").

In the context of court proceedings, the Court has focused on the training and qualifications of the nonlawyer, together with the nature of the conduct. For example, the Court has held:

> [O]ur respect for the rigorous professional training, certification and licensing procedures, continuing education requirements, and ethical code required of Certified Public Accountants (CPAs) convinces us that they are entitled to recognition of their unique status. We hold that CPAs do not engage in the unauthorized practice of law when they render professional assistance, including compensated representation before agencies and the Probate Court, that is within their professional expertise and qualifications. We are confident that allowing CPAs to practice in their areas of expertise, subject to their own professional regulation, will best serve to both protect and promote the public interest.

*In re Unauthorized*, 309 S.C. at 306, 422 S.E.2d at 124–25.

In the same opinion, the Court reaffirmed prior opinions allowing an arresting officer to prosecute cases in summary courts in South Carolina. *Id.* at 307, 422 S.E.2d at 125. The Court had previously held this conduct did not constitute the unauthorized practice of law because officers prosecute cases "in their official capacities as law enforcement officers and employees of the State." *State ex rel. McLeod v. Seaborn*, 270 S.C. 696, 698, 244 S.E.2d 317, 319 (1978). The Court noted the officers would "not hold themselves out to the public as attorneys and their activity in the magistrates' courts does not jeopardize the public by placing 'incompetent and unlearned individuals in the practice of law.' To the contrary, this activity renders an important service to the public by promoting the prompt and efficient administration of justice." *Id.* at 699, 244 S.E.2d at 319.

**Approval of Program**

Initially, we take note of petitioners' arguments with respect to the unmet legal needs of tenants facing eviction, which petitioners maintain is an emergency justifying immediate action. We do not quarrel with their arguments, but we take this opportunity to clarify our opinion that these arguments cannot be the sole basis for granting petitioners the relief they seek.

Lawyers act as fiduciaries, and their representations and advice bind their clients. Accordingly, lawyer conduct is highly regulated. Lawyers are subject to

discipline, including the suspension or termination of their right to practice law, if they provide incompetent or unethical advice to their clients. To ensure they are equipped to provide competent advice, lawyers undergo extensive education and testing to be licensed, and they must undertake annual continuing legal education on substantive and ethical issues to maintain the right to practice.

Persons who are untrained in the law and who are not subject to this regulation are more likely to provide other persons with inaccurate or incorrect advice, which may result in even more severe economic and emotional consequences for tenants who, facing eviction, are especially vulnerable. Furthermore, we cannot endorse the rendering of incompetent, unethical, or irresponsible guidance, including recommending that tenants raise frivolous defenses in an effort to defend against an eviction. Assistance of this nature not only prejudices the tenants but also the administration of justice. It is for these reasons that the practice of law in South Carolina is highly regulated, and in most cases, reserved to lawyers who have the education and training necessary to assist the cause of another.

However, after careful review of the petition, the Housing Eviction Training Program Manual, the affidavits and declarations of lawyers involved in the Housing Program, and petitioners' supplement to their petition, we find this particular Program appears to provide for sufficient training, safeguards, and

lawyer supervision such that Advocates certified under the Housing Program and working within the strict limits set forth in the Training Manual do not engage in the unauthorized practice of law.

Advocates will be trained to provide only basic, limited information to tenants in eviction actions in magistrates court who agree to participate in the Housing Program. Advocates cannot provide information or guidance beyond what is permitted under the Housing Program, they are required to refer tenants who need additional assistance to legal service providers whenever the situation so demands, and they will not hold themselves out to the public as attorneys. Because the assistance is free and Advocates are not permitted to accept any sort of compensation, it is unlikely that Advocates will seek to provide assistance in excess of what is permitted under the Housing Program. Furthermore, because they and their supervising South Carolina attorneys will have close relationships and knowledge of qualified legal service providers, Housing Advocates will be in an excellent position to refer tenants to qualified South Carolina lawyers who can assist tenants whenever they seek or need assistance that is beyond the scope of the Housing Program.

With respect to the nature and quality of the assistance, the Housing Advocate Eviction Advice Training Manual has been reviewed by at least one licensed South Carolina attorney. That attorney currently serves as the Deputy

Director of Litigation and Training at South Carolina Legal Services and has extensive experience in providing legal assistance to low-income citizens in South Carolina, especially in housing law and eviction matters.

Furthermore, we find there appears to be sufficient lawyer involvement and supervision to ensure that Advocates are appropriately trained and supervised. With respect to training, petitioners state in their supplement to the petition that "[a] lawyer affiliated with the South Carolina NAACP or a legal services provider that partners with the South Carolina NAACP will lead each of the trainings." We find this indicates petitioners will ensure a competent South Carolina lawyer will provide sufficient training to the Advocates.

With regard to supervision, there appear to be sufficient safeguards in place in the form of periodic lawyer review of each Advocate's work to ensure that Advocates provide only limited, competent, and nonfrivolous guidance to tenants so that tenants may exercise their right to appropriately access the courts and raise proper defenses or negotiate resolutions with their landlords. Specifically, petitioners indicate in their supplemental filing that "a lawyer affiliated with the South Carolina NAACP will conduct evaluation sessions with the Advocates." During these sessions, lawyers will review the information Advocates are providing to tenants, discuss any concerns tenants have expressed, "provide additional guidance on issues Advocates are facing, and ensure that Advocates are

complying with all program requirements."

Finally, the fact that petitioners have agreed to share data and other information about the potential successes and failures of the Program weighs in favor of approval. By providing this data, the Court can weigh the efficacy of the Housing Program to determine whether sufficient safeguards are in place to protect the public.

Based on all of the above, we approve the Housing Program on a provisional, Pilot basis for a term of three years, unless extended or terminated by Order of this Court. Petitioners shall submit reports to this Court on an annual basis beginning one year from the date of the issuance of this Order, with copies to South Carolina Court Administration and the South Carolina Access to Justice Commission. Annual reports must include the data and metrics referenced above, together with a comprehensive, written summary of the activities the Housing Program has conducted.

_____ C.J.
_____ J.
_____ J.
_____ J.
_____ J.

Columbia, South Carolina
February 8, 2024