

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

March 1, 2024

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for
 the Second Circuit
40 Foley Square
New York, NY 10007

Re: *Upsolve, Inc. v. James*, No. 22-1345

Dear Ms. Wolfe:

I write in response to Plaintiffs' letter (ECF 238) citing *In re: S.C. NAACP Housing Advocate Program*, No. 2023-001608 (S.C. Feb. 8, 2024). That decision does not address any constitutional question and does not support plaintiffs' First Amendment claim.

In *NAACP*, the South Carolina Supreme Court sat essentially as a regulatory authority under state law. In that capacity, the court granted provisional authorization to a pilot program under which NAACP-affiliated nonlawyers may assist low-income clients in eviction proceedings. The court expressly relied on the NAACP program's "training, safeguards, and lawyer supervision" requirements, including:

- supervision of nonlawyer advocates by licensed attorneys;

- reporting requirements to enable judicial oversight of the program;

- a detailed 29-page training manual to guide nonlawyer advocates (Ex. 1);

- a twelve-hour, four-module educational program covering ethical, procedural, and substantive issues related to eviction matters; and

- comprehension tests after each training module, plus a cumulative final examination.

ECF 238 at 8-11, 16-19.

Contrary to plaintiffs' meritless assertions (*id.* at 1), Upsolve's nonlawyer advocate program is neither "almost identical" nor "essentially identical" to the NAACP's program. Among other differences, Upsolve's program does not provide for attorney supervision or judicial oversight; rests on a sparse, confusing, and inaccurate "training guide" (the current version of which is not in evidence); relies on a "virtual training" the contents of which have not been published; and never tests its nonlawyer advocates' comprehension. State Br. 14-19, 62-67; Reply 26-32.

Accordingly, the *NAACP* decision does not aid plaintiffs here. As noted, the *NAACP* court granted state-law regulatory relief; it did not issue any constitutional ruling, let alone an injunction under the First Amendment. Similarly, plaintiffs here may pursue relief from the Legislature. See Reply 32-33.

In any event, even if the NAACP had a First Amendment right to operate its specific program, Upsolve's as-applied constitutional challenge would still fail. Upsolve's nonlawyer advocate program is materially different from the NAACP's program—it lacks the rigorous training, attorney supervision, and judicial oversight that were critical to the *NAACP* decision. Upsolve's program thus does not satisfy the State's compelling interest in protecting New Yorkers from incompetent and unethical legal advice.

Respectfully submitted,

*/s/ Cleland B. Welton II*

Cleland B. Welton II
Assistant Solicitor General

cc (via CM/ECF): All counsel of record

2

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limit of Federal Rule of Appellate Procedure 28(j) because it contains 350 words.

*/s/ Cleland B. Welton II*
Cleland B. Welton II

# EXHIBIT

# Housing Advocate Eviction Advice Training Manual

**Overview and Introduction**

Thank you for joining the South Carolina NAACP's efforts to help low-income tenants exercise their rights and prevent evictions.

This training guide is designed to certify you as a Housing Advocate who can provide limited and free legal advice to tenants in South Carolina who face eviction. The guide will help you understand the program and the responsibilities you will have as a Housing Advocate.

This program exists to help create a continuum of legal support for tenants who cannot afford a lawyer in South Carolina. Very few tenants in South Carolina have legal representation when their landlords try to evict them. And many tenants are evicted without having a chance to appear in court to defend themselves. This program aims to support these tenants by training you to provide them with accurate advice about (1) requesting a hearing on their eviction action and (2) <u>some</u> of the ways they can defend themselves in the legal proceeding.

This program will not train you to become a lawyer. Instead, you will complement and help existing legal services. The advice you can provide is limited, so it is important that you refer the tenants you work with to the legal services providers listed in Appendix 4.

Together, we believe that we can help tenants who face evictions and shift the imbalances in South Carolina's legal system that contribute to high eviction rates. Not everyone you help will avoid being evicted, but the limited legal advice you provide will help them exercise their rights to have a better chance and more time to retain their housing.

**I.      Obligations of a Housing Advocate**

As a Housing Advocate, you will join the NAACP's mission to advance equality and ensure access to justice. Black tenants in South Carolina experience eviction at a disproportionately high rate. Your role as a Housing Advocate is to assist the tenants you work with by providing free, accurate, and limited legal advice to help these tenants request a legal hearing on their eviction actions and prepare for that hearing.

To join in this work, you must agree to the following requirements:

1. You will assist the tenants you work with free of charge. You may not request or require any form of payment or gratuity from them, their family, or their friends.
2. Before providing any advice, you will make it clear to the tenants you help that you are not a lawyer and that the advice that you are permitted to provide is limited to (1) advice on how to request a hearing and (2) advice on some of the defenses, primarily notice issues, that they may wish to raise during their hearing.
3. You will provide free legal advice only in the manner and form set forth in this training guide. In all cases, that will include referring the tenants you work with to legal services

USCA4 Appeal: 23-1817   Doc: 17   Filed: 11/06/2023   Pg: 41 of 246
Case 22-1543, Document 241, 03/01/2024, 3612854, Page6 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 3 of 30

providers who may be able to provide them with additional legal advice or legal representation.

4. You agree to review this training manual and attend a training session, virtually or in person, offered by the NAACP. You must also attend regular meetings to check in with NAACP staff.

5. You accept and agree to the terms outlined in the Housing Advocate Agreement (Appendix 1) and will return it to the NAACP. Doing so will confirm that you understand your obligations and are participating in the NAACP Housing Advocates Program for the purpose of providing free help to South Carolina tenants so that they may exercise their civil legal rights and avoid being evicted.

***Reminder: Before participating in the program, you must sign and return the Housing Advocate Form.***

To ensure that your work meets the highest standards, you must also agree to comply with the following requirements, which are similar to requirements for lawyers providing pro bono advice:

1. Conflicts of Interest: You will not work with a tenant if you know at the time of providing limited legal advice that you have a conflict of interest. You will not provide the tenant with financial assistance or enter into any business transactions with them.

   o The NAACP does not expect you to check for conflicts of interest. But if you are speaking with a tenant and realize that you may have a conflict of interest—e.g., you are friends with the tenant's landlord, you are related to the tenant's landlord, or a close family member serves as the property manager for the tenant's landlord—you must tell the tenant that there may be a conflict of interest and that you are not able to provide any further advice.

   o You should not tell the tenant what the specific conflict is, but you may explain what a conflict is generally.

   o Once you identify a potential conflict, immediately notify NAACP staff that you are unable to assist the tenant, so that staff can reassign that tenant to another Advocate.

2. Informed Consent: You must receive the tenant's informed consent in writing to be able to provide limited legal advice. To do so, you must explain and have the tenant sign the Tenant Informed Consent Form (Appendix 2).

3. Confidentiality: You must not reveal information related to a tenant's circumstances, situation, or the advice you provided to the tenant, unless you are speaking with NAACP Housing Navigator staff.

To ensure that you fully comply with these requirements, you must adhere to the rules above concerning conflicts, receive informed consent from the tenants you work with and protect those tenants' confidentiality. You must contact NAACP staff at any point at which you have questions with respect to your duties and obligations.

JA037

USCA4 Appeal: 23-1817    Doc: 17    Filed: 11/06/2023    Pg: 42 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page7 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 4 of 30

Accuracy and appropriate limits are critical to the SC NAACP's efforts to ensure that low-income tenants can exercise their legal rights. If you fail to comply with any of these requirements, the SC NAACP will immediately suspend your involvement in the Housing Advocate Program, which will mean that you will no longer be certified to provide the limited legal advice described in this manual. Additionally, you may face prosecution for violating South Carolina's prohibition on the unauthorized practice of law and/or liability under other criminal or civil statutes.

## II.    Background - The Eviction Process and Key Terms

Landlords and tenants in South Carolina are bound by South Carolina's Residential Landlord and Tenant Act (the "Act"). Importantly, the Act establishes the only legal means and process through which a landlord may evict a residential tenant from that tenant's residence. To help you advise the tenants you work with, this training manual describes the different legal reasons a landlord may seek to evict a tenant and each step of the legal eviction process.

### A.    Key Terms
#### a.    Who is a tenant?

The law defines a tenant as a person who can occupy a unit of rental property based on a rental agreement. To evict a tenant, the landlord must have a rental agreement with the tenant, though the agreement does not have to be written unless the lease is going to last more than one year.

People living in the rental unit without the tenant's or property owner's consent and who are not listed on the rental agreement—or covered under an oral rental agreement—are likely going to be considered "trespassers," not tenants, and may be removed through a different process called "Summary Ejectment of Trespassers."[1] The process to eject a trespasser happens more quickly than an eviction.

[N.B. You will only be authorized to work with tenants who are facing a formal eviction action. If a tenant has a court-issued "Summary Ejectment of Trespassers," please have the tenant contact one of the legal services providers immediately. If the tenant owns a mobile home but rents a lot or land from someone else, please have the tenant contact one of the legal services providers, as other laws may apply. If the tenant is in a rent-to-own or an agreement to purchase the rental unit from the landlord, please have the tenant contact one of the legal services providers.]

---

[1] You might encounter a situation in which a person is not occupying the rental property under an agreement with either the actual tenant or the landlord but who, at the time they moved into the property, had the consent of the tenant or the property owner to live there. For example, a family member who owns the property permits another family member, such as a child, to live there but without a rental agreement and then subsequently withdraws permission for the family member occupying the unit to remain. The law is not settled as to whether these occupants are trespassers or what the law calls a "tenant at will." Refer these individuals to legal services providers who can evaluate their status.

USCA4 Appeal: 23-1817    Doc: 17      Filed: 11/06/2023    Pg: 43 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page8 of 33

2:23-cv-01121-DCN     Date Filed 03/21/23     Entry Number 1-1     Page 5 of 30

### b.  Who or what is a landlord?

A landlord is a person or entity that rents property to a tenant. The landlord may own the property or may be leasing or subleasing the property from the owner. The landlord is also responsible for managing the property. The landlord can manage the property or delegate the responsibility to a property management group authorized to act on its behalf.

### c.  What is a rental agreement?

A rental agreement is an agreement, either written or oral, between the landlord and tenant. The agreement establishes the obligations of each party regarding the rental, use, and maintenance of the property.

### B.  Causes for an Eviction Action

### Non-Payment of Rent

The law says a landlord can start the eviction process if a tenant does not pay rent within five days of the date rent is due. Before a landlord can try to evict a tenant for not paying rent, the landlord must provide a written notice about the non-payment. The notice must tell the tenant they will end the lease if the tenant does not pay within five days of the due date.

The landlord does not have to send written notice about late rent if the five-day rule is clearly set out in the lease or if they have given the tenant written notice regarding the five-day rule on a prior occasion.

### Breaking the Rental Agreement

A landlord can seek eviction if a tenant does not follow the rules of the lease, the South Carolina landlord-tenant law, or other rules that apply. The rules of the rental agreement must be reasonable. Most rules about keeping the property clean or the premises safe will be considered reasonable. If a tenant breaks a rule in the lease, the landlord still must notify the tenant in writing that the tenant broke the rule and instruct the tenant that the tenant has 14 days to correct the violation.  This can include violations such as keeping an unauthorized pet, permitting an unauthorized guest to stay in the property, or making too much noise at uncommon hours.

*Keeping the Property Clean and Free of Damage*

Even if it is not written in a lease, a tenant must keep the premises free of any health or safety hazards. If a tenant fails to do so, the landlord may provide a written notice identifying the issues and explaining that the rental agreement will terminate if the tenant does not clean the property, repair it, or pay for any property damage within 14 days. A tenant who refuses to take the necessary action within the given time period may be evicted.

*Landlord Access*

USCA4 Appeal: 23-1817    Doc: 17    Filed: 11/06/2023    Pg: 44 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page9 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 6 of 30

After giving twenty-four hours' notice, the landlord may enter the property to make repairs or inspections during reasonable hours. If it is an emergency situation, the landlord does not have to give notice. (An example of an emergency situation is if a pipe is leaking or if there is a fire.) The landlord also does not have to give twenty-four hours' notice if the landlord is performing regularly scheduled services (e.g. changing air filters regularly) or if the tenant has requested a service.  The tenant may not change the locks, even if the landlord accesses the unit against the tenant's reasonable wishes. The landlord may seek to evict a tenant who unreasonably refuses to let the landlord access the premises.

*Use of the Property*

The property may not be used as anything other than a living space unless the lease permits it. Additionally, a tenant can be evicted for allowing or permitting criminal activity on the property, even if the lease agreement does not specifically prohibit criminal activity. In this case, the landlord is not required to provide notice to cure.

### End of the Lease Agreement

Every lease, whether written or verbal, has a term (i.e., a period of time that the lease lasts). If a lease term expires, and has not been renewed, a landlord may seek to evict a tenant who does not leave the apartment, even if all rent has been paid.

Some lease agreements renew automatically for an additional period of time if the landlord or the tenant does not take action. Tenants should check their lease carefully for renewal rules. If there is not a renewal rule and the tenant wants to stay in the unit, they can ask to renew the lease. If the tenant wants to leave at the end of their lease term, they must be sure to give the landlord proper written notice ahead of time.

If the lease term expires and the landlord and tenant do not agree to a new lease, but the tenant continues to pay rent and the landlord continues to accept rent, by law the lease term converts into a month-to-month term.

For a week-to-week lease, the tenant or the landlord can end the lease by giving seven days' written notice before the end of the lease term. For a month-to-month lease, the tenant or landlord can end the lease by giving one month's written notice before the end of the lease term.

A landlord usually can refuse to renew a lease for any reason whatsoever at the end of a lease term. But a landlord cannot refuse to renew a rental agreement for an illegal reason, like unlawful discrimination based on a protected characteristic or to get back at a tenant for complaining to the landlord or to a codes enforcement officer about the landlord's failure to make repairs or maintain the property.

### C. Steps in the Eviction Process

### 1. Landlord provides notice

A landlord usually begins the eviction process by providing written notice to the tenant of the reason why the landlord will seek eviction: for example, violating a term of a lease, failure to pay rent, or the lease has expired and will not be renewed. As discussed further below, there are some circumstances in which the landlord does not need to provide a separate written notice—for example, if the tenant's lease agreement clearly sets out the five-day rule to pay rent.

**2. Landlord files in court**

A landlord must file an Application for Ejectment in the magistrate's court to have a tenant legally evicted. A landlord cannot legally force a tenant to leave any other way, like changing the door locks, turning off the power, or putting a tenant's property outside.

**3. Landlord provides notice of court proceeding, called "Rule to Vacate or Show Cause."**

The law says that a tenant should receive a legal eviction notice that they are about to be evicted. This eviction paper is called a Rule to Vacate or Show Cause (also referred to as a "Rule to Show Cause"). The landlord must take steps to make sure the tenant receives this paper. In practice, what typically happens is that the landlord pays a fee to the magistrate at the same time that the landlord files the Application for Ejectment. The magistrate's constable then serves the Rule to Show Cause on the tenant.

This notice should be given in person to the tenant or another adult in the tenant's household. However, a process server can post this paper on a tenant's door and then mail a copy after they've made at least two attempts to effect in-person service.

If a tenant has not paid rent and has been absent from the unit, without explanation, for 15 days after the rent was due, the rental unit can be considered abandoned. In that case, the law says a copy of the Rule to Show Cause may simply be posted on the tenant's door rather than delivered to a person.

**4. Tenant requests a hearing**

Once a tenant receives the Rule to Show Cause, the tenant has only ***10 days to request a hearing.*** If the tenth day falls on a weekend or county holiday, the deadline to request a hearing rolls over to the next working day. The tenant must let the court know that they want to explain why they should not be evicted to the magistrate. Most magistrate courts allow a tenant to request a hearing by calling the clerk of court, but a few courts require a written hearing request from the tenant. The Rule to Show Cause specifies how a tenant may request a hearing.

This is also the time to request a jury trial, if a tenant wants a jury to decide the case instead of the judge. Jury trial requests must be made in writing. If the tenant facing eviction for nonpayment of rent requests a jury trial, the judge will set a hearing to collect past due rent and to order the tenant to continue paying rent before setting the date for the jury trial. At present, in Greenville, Kershaw, Lexington, and Richland counties, a request for a jury trial should also cause the case to be sent to mediation before trial.

USCA4 Appeal: 23-1917   Doc: 17       Filed: 11/06/2023   Pg: 46 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page11 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 8 of 30

The tenant should look carefully at the Rule to Show Cause because the magistrate may have already set a hearing date.

**5. Court schedules a hearing**

The court will schedule a hearing to allow both the landlord and the tenant to tell their sides of the story. Sometimes the "Rule to Show Cause" will have a hearing date on it. Otherwise, the court will schedule a hearing once the tenant requests it.

It is important that the tenant appear at the hearing. The tenant should bring any witnesses with them to court, as well as any evidence that they would like to present. The landlord (or their lawyer) will have the chance to ask questions of the tenant and any witnesses. The tenant (or their lawyer, if they have one) will also have the chance to ask questions of the landlord and any witnesses. The judge or jury will make a decision based on the information presented.

If the tenant is still living in the unit while the court case is going on, they will still have to pay rent. The judge may ask the tenant to pay rent to the court instead of the landlord until the case is over.

**6a. Tenant prevails**

If the court rules in favor of the tenant, the tenant may continue residing at the property. The tenant should continue to pay rent, including any back rent that is owed, and follow other rules. If the landlord has taken steps to prevent the tenant from accessing the property, the tenant can seek additional relief from the court.

[N.B. You should refer the tenant to legal services providers if the landlord has taken steps to bar the tenant from the property, such as by changing the locks, turning off utilities, or removing the tenant's property.]

**6b. Tenant loses and receives a writ of ejectment**

If the verdict is for the landlord, the magistrate will issue an order called a "writ of ejectment" within 5 days, and the tenant shall be ejected by a Deputy Sheriff of the County. The Deputy Sheriff who carries out the writ of ejectment presents a copy of the writ to the tenant, and gives the tenant an opportunity to vacate voluntarily.  The law says that a tenant only has twenty-four hours to vacate after being presented with the writ of ejectment.  This is called the set out date. Some deputies, however, will extend this time and will write the final set out date on the writ of ejectment.  If the writ of ejectment has been given to the tenant, but the tenant is uncertain about when the Deputy Sheriff intends to come back to the property and set the tenant out, the tenant can call the Sheriff's Department. If the tenant refuses to vacate or the premises appear unoccupied, the Deputy Sheriff may enter the rental unit by force if necessary, using the least destructive means possible, in order to eject the tenant. The Deputy Sheriff may also supervise the landlord or landlord's agent while the landlord or their agent removes the tenant's belongings from the property. The Deputy Sheriff may use discretion in delaying the removal of ill or elderly tenants.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 47 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page12 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 9 of 30

**6c. Tenant and landlord settle, or magistrate gives tenant more time**

The tenant and landlord can settle the case either before or at the hearing. Sometimes, the tenant will promise the landlord that the tenant will voluntarily move out within a set amount of time, and the landlord will agree to withdraw the eviction action. In other cases, the landlord and tenant might agree to become current on rent payments or address the issue prompting the landlord to file the eviction action. If the landlord and tenant settle, the tenant never receives a writ of ejectment.

In rare cases, the tenant can avoid a writ of ejectment by asking the magistrate for more time. If, for example, the tenant will be able to pay all the back-owed rent within a day or two, the tenant might be able to request a short extension to pay off the rent. If the magistrate grants the extension, the tenant is required to pay the rent before the deadline set by the magistrate. But magistrates rarely grant extensions over the landlord's objection.

**7. Appeal**

Both the tenant and the landlord have the right to appeal the decision that the judge or jury makes in the case.  An appeal is filed with the circuit court. If the tenant loses their eviction case but wants to stay in the rental property and disagrees with the decision to evict them, they must file an appeal with the circuit court within thirty days of the date that the magistrate court announced the decision. Practically speaking, the tenant should appeal before the set out date. To stay, or halt, the physical ejectment, the tenant also must file a document called an undertaking. The undertaking is the tenant's promise to continue paying rent to the landlord as it becomes due after the appeal is filed. They must continue to pay rent.  If a tenant does not pay rent in full within five days of the due date, the landlord can inform the court of this, and the court can dismiss the appeal.

**8. Permanent Listing on Public Index**

Regardless of the outcome of the tenant's case, the eviction filing will remain on the Public Index indefinitely. The eviction filing becomes public as soon as the landlord files an Application for Ejectment. It is possible that the eviction filing may make the tenant's search for future housing more difficult. It is generally better, however, for the Public Index to show the case as dismissed or settled, rather than a decision against the tenant.

**III.    Your Role as an Advocate**

As a trained Advocate, your role will be (1) to help the tenants you work with understand the eviction proceedings they face, (2) to provide them with the limited legal advice described below concerning requesting a hearing and notice issues, and (3) to connect them to other services, including potential legal representation. To do this work, follow these steps:

Step 1: Assess whether you can help the tenant.

1. Check to see whether the tenant is facing a formal eviction.

USCA4 Appeal: 23-1917    Doc: 17        Filed: 11/06/2023    Pg: 48 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page13 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 10 of 30

To start, you must confirm that the tenant you are working with is facing a possible eviction. To do so, check to see if the tenant has received a Rule to Vacate or Show Cause. This order should have been served on the tenant (or another adult in tenant's household) in person, but it may have been nailed or taped to the tenant's door and sent via mail if the tenant was not present to receive it on the first two service attempts.

- If she has not received a "Rule to Vacate or Show Cause" order, but her landlord has changed the locks, turned off a utility, or claimed that she's not allowed to enter her residence, then her landlord is attempting to illegally evict her. **You should immediately refer her to the legal services organizations listed in Appendix 4.**

Once you've determined whether the tenant has received a "Rule to Vacate or Show Cause" order, **review the order to determine on what basis the tenant you are working with is being evicted**. There are three options: (1) failure to pay; (2) lease violation; or (3) end of lease term. The tenant's landlord must check the corresponding box or boxes on the "Rule to Vacate or Show Cause" order. Look to see which box(es) the landlord checked. Most tenants are evicted for failure to pay their rent. But figuring out why the tenant is being evicted will help you determine what advice to give.

You should only assist tenants renting from private landlords. If the tenant receives a housing choice voucher, lives in public housing, or lives in other housing subsidized by the federal government please refer her to one of the legal services providers.

2. Determine when the tenant received notice of the eviction.

Next, **determine, as close as possible, when the tenant was served with the Rule to Vacate or Show Cause.** A tenant only has ten days after being served with a Rule to Show Cause in which to request a hearing. If a tenant does not request a hearing within that 10-day window, then she will likely automatically lose her case by default. So it is very important that you try to figure out when the tenants you work with were served.

As a starting point, ask the tenant <u>when</u> and <u>how</u> they received the Rule to Show Cause. They might, for example, have been personally served with the order on a specific day. Or they might remember that they returned home two days before meeting with you to find the order on their door. That means that they were served at least two days ago. To best determine when the tenant was served, you should ask the tenant whether it's possible that they received the order before the date they remember.

- To check to see when the tenant was served, you should (1) review the Rule to Show Cause to see if it has a date of service, and (2) follow the instructions in Appendix 6 to check South Carolina's Public Index, the state's online repository of legal filings, to see whether the court has listed the date when the tenant was served. In many cases, neither the order nor the Public Index will include the date of service. But, if either does, use that date.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 48 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page14 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 11 of 30

- Importantly, figuring out when the tenant was served is not the same as figuring out when the tenant *realized* they had been served the Rule to Show Cause, or when they decided to reach out for help. What matters is when the tenant personally received the notice or when the notice was put on the tenant's door.

Many tenants will not know or remember exactly when they were served with the Rule to Show Cause. As discussed further below, you will have to advise them to be careful. If you're able to help them, the advice you will provide is an attempt to give them as much time as possible to request a hearing, prepare a defense, and negotiate with their landlord or, if needed, look for alternative housing. But, if they request a hearing after the 10-day window has passed, they will likely not have a chance to appear to contest their eviction action.

- Make sure that the tenant is not already beyond the 10-day window, has already had a hearing, or does not already have a Writ of Ejectment. If any of these is the case, the tenant is too far along in the eviction process, and you are unable to provide legal advice. **You should direct the tenant to the legal services organizations listed in Appendix 4 and advise the tenant to look for alternative housing**.

Step 2: Confirm the limited scope of your representation.

If you are able to assist the tenant—meaning that there is still time for the tenant to request a hearing, or the tenant requested a hearing that has yet to happen—then you should inform them that you can provide free and limited legal advice. That advice will help explain how and when the tenant should request a hearing on the eviction action, and it will help the tenant prepare for that hearing. You should also share with the tenant that you are providing this legal advice to help them access the courts and exercise their rights. You should be clear that you can only provide narrow advice, but that requesting a hearing can give the tenant an opportunity to be heard and provide the tenant with more time.

Before giving limited legal advice, you must have the tenant read and sign the Tenant Informed Consent Form (Appendix 2) so that the NAACP can track all tenants who have been given legal advice and follow up with these tenants to ensure that the advice they received was helpful and consistent with this Guide.

Step 3: Advise the tenant about requesting a hearing.

1. Determine how the tenant should request a hearing.

**Begin by determining *how* the tenant should request a hearing**. To do so, review the tenant's Rule to Show Cause. That document will tell you how the tenant needs to request a hearing. In nearly all cases, the tenant can do so just by calling the magistrate's office and saying they would like a hearing. But in some rare instances a tenant must send a request in writing to the magistrate or request a hearing in person. The Rule to Show Cause will tell the tenant—and you— how she should request a hearing.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 50 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page15 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 12 of 30

2. Advise the tenant when she should request a hearing.

Next, **advise the tenant *when* she should request a hearing on the eviction action**. Again, this advice is based on how long ago the tenant was served with the "Rule to Vacate or Show Cause" order. Tenants only have 10 days in which to request a hearing, so you must make sure that they do not wait too long.

- If the tenant is unsure or believes they are close to the 10th day, then you should advise her to request a hearing immediately.

But, if the tenant knows when they were served with a "Rule to Vacate or Show Cause" order, then you should advise her to wait until the end of the ten-day period to request a hearing. If the tenant just received the eviction notice and feels comfortable waiting, advise the tenant to call to request a hearing on the 8th or 9th day from the date of service. But you must caution the tenant that waiting too long could cause her to lose her opportunity to have a hearing.

- For example, if the tenant's date of service is September 8, the tenant must request a hearing before close of business on September 18. Thus, the tenant could request a hearing on September 16 or 17 to maximize the time the tenant has to raise the necessary funds or find alternative housing.

Keep in mind that the tenant has ten calendar days to request a hearing, **not ten business days**. Even though the court is closed on weekends and holidays, those days count towards the ten days the tenant has to request a hearing. If the 10th day falls on a weekend or holiday, the tenant will have until the following business day to request a hearing.

If you are meeting with the tenant during the day, you can sit with the tenant as the tenant makes the phone call and help them follow the script in Appendix 3.

Step 4: Advise the tenant about the hearing.

1. Determine whether the tenant has received proper notice from the landlord to terminate the lease. Remember, this notice is separate and different from the Rule to Show Cause. The Rule informs the tenant that an eviction action is pending against her and instructs her to respond. But the notice from the landlord must inform the tenant that the lease will be terminated. The notice from the landlord is often called a "Notice to Vacate." It can sound similar to a Rule to Vacate or Show Cause. Be careful to distinguish between the two because they serve different purposes and have different legal consequences. You should ask to see the notice and read it before deciding what kind of notice it is or what it means.

Review the tenant's lease with the tenant. If the tenant does not have a written lease, **you should immediately refer the tenant to a legal services provider.**

- If the tenant does have a lease, the lease will help you understand whether the tenant received proper notice from the tenant's landlord. If the tenant did not receive any notice

USCA4 Appeal: 23-1917    Doc: 17       Filed: 11/06/2023    Pg: 51 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page16 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 13 of 30

from the landlord about terminating the lease, or received an inadequate notice, then that might be a defense against the eviction action that the tenant should present to the magistrate at the hearing.

- Remember, each type of eviction has different notice requirements for landlords.

For failure to pay cases, landlords cannot start to evict tenants who have fallen behind on rent until more than 5 days have passed from when the tenant owed rent. Check the lease to see when the rent was due.

- Compare when the rent was due with when the Rule to Show Cause order says the landlord filed to evict the tenant. The landlord cannot file to evict before the sixth day after the rent was due. [For example, if the tenant's rent due date was March 1, the tenant has until March 6 to pay her rent. If the Rule to Show Cause was issued before close of business on March 6, the landlord brought the eviction action too early.]
- If, however, the landlord claims the tenant owes more than a single month's rent, then you should ask the tenant whether the tenant is more than a month behind on paying rent. If that's the case, then the landlord would not need to wait 5 days from the tenant's most recent due date.

[Note: If the tenant is committing or allowing unlawful activity to be committed on the premises of the tenant's rental unit, then the landlord may move to evict the tenant without waiting until the sixth day after the tenant's rent was due.]

- The landlord must also provide written notice before moving to evict a tenant who is behind on rent. Often, that notice will be included as a lease provision. The lease may state: "If you do not pay your rent on time, this is your notice. If you do not pay your rent within five days of the due date, the landlord can start to have you evicted. You will get no other notice as long as you live in this rental unit." If the lease does not include this language, or a substantially similar provision, then the landlord must provide the tenant with a separate written notice before the landlord files to evict.
- Also, if the five-day notice to pay rent is written into the lease, it must be conspicuous. This means that the notice cannot look the exact same as the rest of the language in the lease. For example, to be conspicuous, the **notice should be bolded**, WRITTEN IN ALL CAPS,-------------- set out as a standalone statement-------------------, or some combination of these. If you are uncertain whether the notice is conspicuous or not, refer the tenant to a legal service provider to examine the lease.
- If the lease does not include a provision providing advanced notice, or if the notice is not conspicuous in the lease, then ask the tenant whether the landlord provided separate written notice. If the landlord did not do so, then the tenant did not have proper notice.
- But a landlord only needs to provide a tenant notice once during the tenant's residency. So, even if the landlord does not include advance notice in the tenant's lease, the landlord does not need to provide the tenant separate written notice again if the landlord has already done

so. If, however, the landlord and tenant enter into a new lease, then the landlord would have to give the tenant notice again to begin terminating that new lease.

If the tenant received improper notice—either because the landlord did not wait more than five days before trying to evict the tenant for failure to pay or because the landlord did not provide any written notice of the five-day rule—then you should advise the tenant that the tenant may have a defense that they should present to the magistrate.

For lease violations other than non-payment of rent, landlords must provide tenants with written notice at least 14 days before filing to evict so that the tenant may attempt to cure the violation. Ask the tenant if they have a copy of any letters or notifications from the landlord about possible lease violations.

- If the landlord did not provide the tenant with 14 days' notice, the landlord did not provide proper notice.
- If the landlord did not state what the tenant did to breach the lease, then the notice is not proper.
- If the notice does not instruct the tenant to clean, repair, or replace the damaged item, or not to commit another violation of a lease provision that they have violated in the past (e.g. unauthorized pets, guests, or noise), then the notice is not proper.
- There is no special language that the landlord must use, but the notice must (1) inform the tenant of what they did or are doing to violate the lease and (2) inform them if they do not clean, repair, replace or stop breaching the lease, then the lease will terminate in fourteen days.
- But, if the tenant is committing or allowing unlawful activity to be committed on the premises of the tenant's rental unit, then the landlord may move to evict the tenant without providing notice 14 days in advance.
- The notice to cure can specify a time to cure of less than 14 days if the tenant is violating the lease in a manner that affects health and safety or the physical condition of the property and the landlord considers the violation to be an emergency.  In emergency situations, the landlord does not need to give the tenant written notice 14 days before filing to evict. Instead, the landlord can provide notice to the tenant of the issue and then file to evict if the tenant does not remedy the issue as promptly as conditions require. For example, if the tenant's actions or inactions are creating immediate health and safety hazards (e.g. a threat of fire or other serious injury), the notice might require the tenant to comply in less than 14 days.  Again, the "Rule to Vacate or Show Cause" order will specify the ground[s] on which the landlord is moving to evict the tenant.

If the tenant received improper notice, then you should advise the tenant that the tenant may have a defense that they should present to the magistrate.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 53 of 246
Case 22-1345, Document 241, 03/01/2024, 3612834, Page18 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 15 of 30

For end of lease terms, the landlord must provide the tenant with 30 days' written notice to vacate the property before filing to evict the tenant if the lease is a month-to-month lease, or 7 days' written notice if the lease is week-to-week.

[N.B. For leases that are not month-to-month or week-to-week, the lease simply expires when the lease says it expires, and no additional written notice is required under the Act.  But the tenant's lease may include additional notice requirements related to the end of a lease term.]

Review the tenant's lease, and ask the tenant if they have a copy of any written communications telling the tenant that the lease was ending.

- If the tenant has a month-to-month lease, and the landlord did not provide the tenant with 30 days' written notice to vacate before filing to evict the tenant, the landlord did not provide proper notice.

- If the tenant has a week-to-week lease, and the landlord did not provide the tenant with 7 days' written notice to vacate before filing to evict the tenant, the landlord did not provide proper notice.

- If the landlord verbally told the tenant to leave in a month-to-month or week-to-week tenancy, but did not do so in writing, the landlord did not provide proper notice.

If the tenant received improper notice, then you should advise the tenant that the tenant may have a defense before the magistrate or at the trial.

2. Discuss the tenant's options and flag additional defenses.

Now that you have explained to the tenant how (and, in most cases, when) to request a hearing and have determined whether the landlord provided proper notice to terminate the lease, **you should discuss the tenant's options.**

Many tenants may want to fight their eviction actions because they believe they are being evicted unjustly. But some just want a few more days to find alternative housing and move out. If that is the case, you should advise them to contact their landlord and try to negotiate a deal under which the landlord will stop the eviction action if the tenant agrees to move out by a certain date. This is often in the landlord's interest because it can help ensure that the tenant moves out. It's also often in the tenant's interest because it gives the tenant more time and can cause the landlord to drop the eviction action.

- Note: Having an eviction filed against a tenant can make it harder for the tenant to find alternative housing. Having a negative outcome in that action—e.g., a default judgment or having a magistrate rule against the tenant after a hearing—can make it even harder. If the landlord agrees to withdraw the eviction action so that the tenant can move out, the tenant should still request a hearing, if within the ten days to reply, to avoid the possibility that the landlord fails to inform the court about the agreement and the magistrate court issues a default judgment against the tenant anyway.  After coming to an agreement with the

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 54 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page19 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 16 of 30

landlord, the tenant also should check with the magistrate's office to make sure that the magistrate does not enter judgment against the tenant. The ideal outcome for the tenant for an eviction that appears in the Public Index is either "dismissed" (the preferred outcome) or "settled" (the second best outcome). A tenant might ask whether the eviction can be "removed" from their record. The short answer is "no," because eviction actions are not sealed.

Similarly, if the tenant you're working with is being evicted because of failure to pay rent and cannot pay that rent, and the landlord has given her a proper five-day notice to pay, then you should tell her that she will likely lose her eviction action. In that case, the tenant should try to negotiate with the landlord. She could, for example, ask the landlord to agree to a payment plan or offer to move out on a certain date. But she should also try to find alternative housing.

If the tenant you are working with would like to contest the eviction action, you should tell the tenant to make sure to attend the hearing. The hearing's an important opportunity for the tenant to present their side of the case and explain to the magistrate why they should not be evicted.

Depending on the tenant's circumstances, **you should provide her with the following advice**:

- If she is being evicted for failure to pay rent but has paid the landlord, she should bring any proof of payment, like a copy of a check, and tell the magistrate judge. She should organize the proof of payment in chronological order and bring three printed copies of any evidence she has—one copy for the court, one copy for her landlord, and one copy for her.
- Even if she has only partially paid the landlord and will be able to pay the landlord in full soon, she should explain that to the magistrate judge and request an extension. The magistrate might still rule against the tenant, but the magistrate could also provide her with a short extension.
- If the magistrate rules against the tenant but the tenant can find alternative housing in a short amount of time, the tenant should ask the magistrate to give the tenant a set number of days to relocate before issuing a writ of ejectment—the court order requiring the tenant to leave, which goes on the Public Index. If the tenant is able to relocate during that time, she might be able to avoid a writ of ejectment being issued against her.

Again, these are not necessarily full defenses. If the tenant is in breach of the lease and the landlord has given all required notices, the magistrate will likely still rule against the tenant. But explaining the situation will help the tenant exercise her rights and potentially win or have more time to find alternative housing.

[N.B. If the tenant is being evicted for failure to pay rent or a lease violation but has living conditions that affect whether it is possible for the tenant to live in her apartment, immediately refer her to a legal services provider. The tenant may have what is called a "counterclaim." A counterclaim is different than a defense. She may need to write down and put it into an answer if

USCA4 Appeal: 23-1917    Doc: 17         Filed: 11/06/2023    Pg: 55 of 246
Case 22-1345, Document 241, 03/01/2024, 3612834, Page20 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 17 of 30

she wants the magistrate court to consider that issue. You should not advise a tenant about how to file a counterclaim.]

Once you've provided her with this specific advice, you should walk through the general advice for tenants provided by the South Carolina Supreme Court (Appendix 5).

Step 5: Answer questions within the scope of this training and refer the tenant to legal services and other resources.

The tenant you are working with may have a lot of questions. You must be careful not to answer legal questions that go beyond this training. For example, you cannot advise the tenant on how to sue their landlord.

The tenant may also have more general questions about the hearing, like "will I win?" You should not provide the tenant with false confidence. Outcomes are very difficult to predict. Even if, for example, the tenant has been improperly served, the tenant could still lose—you do not know how the magistrate will rule. You should always advise the tenant to try to prepare in case they lose and are evicted.

Remember: You can only provide the tenant with the limited legal advice described in this training guide. A legal services lawyer, for example, might be able to provide them with additional legal advice or full representation. You should tell them to contact the legal services organizations in Appendix 4.  You should also ask them if they are OK with you passing their contact information along directly to these legal services organizations, so that those organizations can also reach out to them.

Finally, you should also mention the additional resources listed in Appendix 4. Eviction is a legal process, but financial and other social services can help the tenant avoid being evicted or find the resources they need to retain stable housing.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 56 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page21 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 18 of 30

## Appendix 1 – Housing Advocate Agreement

Before you are permitted to provide limited legal advice as part of the NAACP Housing Advocate Program, you must attest to the following:

1. I am providing limited legal advice on how to request an eviction hearing and notice defenses with the specific, narrow mission of helping South Carolinians on the verge of eviction exercise their legal rights before the magistrate's Court.
2. I promise to assist the tenant free of charge and will not request or require any form of payment or gratuity from them, their family, or their friends.
3. I promise that I will provide free legal advice only in the manner and form determined in the Training Guide. I understand that if I provide legal advice outside of the scope of the Training Guide, I may be engaging in the unauthorized practice of law or violating other legal prohibitions, and I understand the consequences of doing so.
4. I agree to comply with similar requirements to lawyers who provide pro bono advice. I promise to cease providing legal advice if there is any risk that it will not be in the tenant's best interest in accordance with the following rules:
   a. Conflicts of Interest: I will not work with a tenant if I know at the time of providing limited legal advice that I have a conflict of interest or the appearance of a conflict (e.g. I am friends with the tenant's landlord).. I will not provide the tenant with any financial assistance or enter business transactions with them.
   b. Informed Consent: I will receive the tenant's informed consent in writing to be able to provide limited legal advice. To do so, I must explain and have the tenant sign the Tenant Informed Consent form (Appendix 2).
   c. Confidentiality: I will not reveal information relating to a tenant's circumstances, situation, or any legal advice provided to the tenant.
5. I have reviewed this training manual and attended a training session offered by the NAACP. I recognize that if I fail to abide by the terms outlined in this Affidavit and by the NAACP, I can be removed as an Advocate and may face other penalties, such as penalties for engaging in the unauthorized practice of law.

_____          _____
Printed Name                                              Phone Number/Email Address

_____          _____
Signature                                                   Date

USCA4 Appeal: 23-1917    Doc: 17        Filed: 11/06/2023    Pg: 57 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page22 of 33

2:23-cv-01121-DCN     Date Filed 03/21/23     Entry Number 1-1     Page 19 of 30

## Appendix 2 – Tenant Informed Consent

Thank you for your interest in the SC NAACP Housing Navigator Program, a program created in response to South Carolina's ongoing eviction crisis. The NAACP is committed to racial and economic justice. The SC NAACP has an ongoing mission to help people protect their housing and exercise their legal rights through access to the courts.

By working with a Housing Advocate, you are entering into an agreement with the SC NAACP. This agreement describes the Advocate's role in providing you with free, limited legal advice and assistance related to an eviction proceeding and helping you request a hearing.

**Advocate's Role:** The Advocate is not a lawyer or an employee of the court. The Advocate is a volunteer tasked with providing you with free advice to help you exercise your right to a hearing in an eviction proceeding.

**Scope of Legal Advice:** The Advocate can provide only limited legal advice about a possible eviction, requesting a hearing, and certain notice defenses so that you can present your side of the case before the Magistrate's Court. You may have to represent yourself in court. The Advocate will not be able to attend court with you, and neither will anyone from the SC NAACP. But the Advocate will assist you as you call the court to request a hearing, and the Advocate will help refer you to legal services organizations that may be able to provide you with additional legal advice or representation.

***Neither the SC NAACP nor the Advocate assume any liability arising out of or relating to the outcome of your case.***

**Cost:** The limited advice you receive is free of charge. You will not be asked to pay anything; you should not offer any tips or services to the Advocate. If for any reason you are asked to pay, please contact the SC NAACP immediately.

**Duration and Follow-up:** The Advocate role is limited to this meeting, but the SC NAACP may contact you in the future.

**Limitations:** The Advocate may decline to provide you with advice and direct you to seek legal counsel if your case is too complex or outside of the scope of their ability to provide limited legal advice. For example, the Advocate cannot assist you if you receive a housing voucher or live in public housing, if you do not have a written lease, or if you have already missed your opportunity to request or attend a hearing on your eviction action.

By signing this form, you acknowledge that you have been informed of your rights and consent to receive limited legal advice concerning your eviction proceeding.


_____          _____
Printed Name                                      Phone Number/Email Address

_____          _____
Signature                                         Date

USCA4 Appeal: 23-1917    Doc: 17        Filed: 11/06/2023    Pg: 58 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page23 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 20 of 30

## Appendix 3 – Hearing Request Script

**You can use the following script as a guide to help you call the Magistrate Court to request a hearing. You don't have to follow the script closely, but it can be a helpful resource as you call to ask for a hearing.**

"Hello, I am calling to speak with Magistrate _____, or the clerk for the Magistrate."

*The name of the magistrate is on the Rule to Vacate or Show Cause.*

*Note you may be forwarded to a different number, but stay on the line until you can request a hearing.*

"My name is _____. My case number is _____."

"I have received a Rule to Vacate or Show Cause and would like to schedule a hearing."

*You can write down the hearing date and, if given, the time of the hearing in the blank below. You can also confirm the date and time to make sure you heard correctly.*

"Is there anything else I need to know or do before the hearing?" (A question to ask if you would like additional information.)

*You can close the call by saying,* "Thank you."

**Notes:**

Hearing    Date: _____
Other    Information: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 59 of 246
Case 22-1345, Document 241, 03/01/2024, 3612834, Page24 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 21 of 30

**Appendix 4 – Alternate/Additional Resources**

The following resources may help you with your eviction proceeding.

**Find a Lawyer or Get Legal Help**

- South Carolina Legal Services Intake Form:
  https://www.lawhelp.org/sc/online-intake
  - You can also call South Carolina Legal Services at 1-888-346-5592.
  - South Carolina Legal Services has income eligibility requirements.
    You can access the most updated income guidelines on their website.
- SC Bar: Get Legal Help: https://www.scbar.org/public/get-legal-help/

**Self-Help: Learn the Law**

- Learn the Law: Residential Eviction Defense:
  https://www.learnthelaw.org/group/502/classroom/2291
- Learn the Law: D.I.Y. Residential Eviction Defense:
  https://www.learnthelaw.org/group/502/classroom/2293/868

**Facing Housing Discrimination?**

- Complete the SC Fair Housing Act Complaint Form:
  https://schac.sc.gov/sites/schac/files/Documents/Public%20Accomodations/
  4Fair%20Housing%20Initial%20Inquiry%20Questionnaire%20FOR%20IN
  TERNET%20(2).pdf (SC Fair Housing Act complaint form PDF)
- https://sc.accessgov.com/humanaffairs/Forms/Page/humanaffairs/fairhousin
  g/0 (SC Fair Housing Act complaint online submission)
- HUD Housing Discrimination Hotline Toll-free Number: 1-800-669-9777

**You can always contact United Way of South Carolina by visiting sc211.org or calling 211 to help you find additional resources.**

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 60 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page25 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 22 of 30

## Appendix 5 – Court Preparation/Proceedings

The South Carolina Supreme Court's website provides "Instructions for Eviction Hearings." This document explains how eviction hearings work. It can be found at https://www.sccourts.org/forms/pdf/SCCA733B.pdf.

**Before the Hearing**

- Gather your evidence. Make sure you prepare to bring three copies of everything to court with you—one copy for you, one for your landlord, and one for the court.
  - Your evidence must be printed out. Organize your proof of payment in chronological order (by date) and bring the three copies to court with you.
- Magistrates will not look at any photographs or documents stored on your phone. Write down your arguments. You may want to write down your arguments about why you should not be evicted from your home. Use your evidence in your arguments. By writing down what you plan to say to the court, you will already be familiar with your arguments when the judge asks for you to share your side of the case.
- Practice your arguments. You may want to practice your argument presentation out loud by yourself, in front of the mirror, and in front of family and friends.
- Write your court date down on your calendar. You don't want to miss your court date, so make sure that you write down your court date in a place that you will remember or set a reminder in your phone.
- Request an interpreter. If you have hearing or language access concerns and have not already, call the court to request an interpreter as soon as you know your hearing date. Then, the court will know to have an interpreter present on the hearing date.
- Scout the location. If you have time, you may want to visit the courthouse and/or the courtroom before your hearing.

**The Hearing Day**

- Be prepared. Bring the three copies of your evidence and your court documents, including your Rule to Vacate or Show Cause and a copy of your

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 61 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page26 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 23 of 30

answer/hearing request if it is in writing. You may want to put all your documents in a file folder to stay organized. You may also want to bring paper and pens so that you can take notes.

- Dress nicely. Present yourself as though you were going to a job interview. Avoid wearing t-shirts, tank tops, jeans, sunglasses, and torn or ripped clothing. Also, avoid exposing too much skin. Court is a formal space, and you should dress respectfully.

- Arrive early. Give yourself plenty of time to get to court. Make sure to consider traffic, weather, and parking. If you are taking public transportation, check the schedules to see if you should plan to leave earlier than usual. Running late can increase anxiety, and you want to remain calm and composed so that you can confidently share your side of the case with the court. You will also have to go through a security check, so avoid bringing weapons or dangerous items to court.

- Respect the court. Once you are in court, turn off your cell phone, or at least make sure that it is silenced. Avoid looking at it while the judge is hearing your case. You should remain quiet in the courtroom and address the court when the judge asks you to speak.

- Speaking in court. Speak slowly, clearly, and loud enough to be heard. You do not need to yell. But you want to avoid mumbling or speaking softly. Address the judge as "Your Honor." Don't curse or use offensive language. Answer yes or no questions audibly; don't shake or nod your head. Your words may be recorded by a court reporter as part of the official court record.

- Jury trial. If you requested a jury trial, you should contact South Carolina Legal Services of a legal services provider for legal assistance and an attorney. If you are unable to get an attorney, you may want to review one of the Learn the Law resources in Appendix 5 to help you prepare for your trial.

- Before leaving. Make sure you understand what happens next. If you had a hearing, the judge will likely rule at the end of the case. If you had a jury trial, the jury must return a verdict. The judge will likely tell you whether you won or lost before you leave and will give you directions on what to do next. If not, make sure you ask about next steps.

- What a Writ of Ejectment means. If you lose, the judge must issue a Writ of Ejectment within 5 days after ruling for the landlord. The Writ will be served

USCA4 Appeal: 23-1917      Doc: 17      Filed: 11/06/2023      Pg: 62 of 246
Case 22-1345, Document 241, 03/01/2024, 3612854, Page27 of 33

2:23-cv-01121-DCN      Date Filed 03/21/23      Entry Number 1-1      Page 24 of 30

on you in person or will be posted on your front or back door. Once it is served, you will have 24 hours to leave the property.

- *Remember if you do not show up in court, the magistrate will enter a default judgment, and you will lose your case.*

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 63 of 246
Case 22-1345, Document 241, 03/01/2024, 3612834, Page28 of 33

2:23-cv-01121-DCN     Date Filed 03/21/23     Entry Number 1-1     Page 25 of 30

## Appendix 6 – Accessing and Using the Public Index

To help a tenant determine whether they were served and when they were served with the Rule to Vacate or Show Cause, you can use the Public Index on the South Carolina Courts website. The Public Index can be accessed at https://www.sccourts.org/casesearch/.

Once you reach the website, you should see a county map and a list of all 46 counties. Ask the tenant what county their address is located in, and click the county from the map or the list of counties. For example, you can click on Chesterfield County by using either the map or the county list.



After clicking the county, a disclaimer will appear. The disclaimer acknowledges that the information may not be accurate, reliable, or timely. The disclaimer explains that you are using the data provided at your own risk. The disclaimer also states that you may not misuse the website by data scraping. The first time you use the website, you may want to read the disclaimer for yourself. Click the "accept" button to proceed to the data index.



If the tenant has the Rule to Vacate or Show Cause, you can type the case number into the index, and once you press enter or click the "search" button, you should see the tenant's precise case. On the Rule to Vacate or Show Cause, the case number is the "Civil Case Number in the Magistrate's Court."

If the tenant does not have the Rule to Vacate or Show Cause, you can search for the tenant's case by using their last name. You can also search for the tenant's full name. You may want to refine the search if the tenant has a common name. You can refine the search by choosing case type and case subtype. For example, most eviction actions are filed under case type "Civil" and case subtype "Rule to Vacate $40" or "Rule to Vacate $45." Note that several Rule to Vacate prices exist in the case subtype category, so you may want to click through all of them if you do not immediately find the tenant's case.



You can also refine the search by selecting a range of dates. To choose the dates, you must select the date type, then use the calendar to select the beginning and ending dates when the landlord might have filed the Application for Ejectment. You may want to generally select dates within the last month, including today's date. That way, you will be able to see all actions filed recently.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 65 of 246
Case 22-1345, Document 241, 03/01/2024, 3612834, Page30 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 27 of 30



Once you find the tenant's case, click on the case number.



By clicking on the case number, you should see information related to the tenant's case. Towards the top of the page, you should see the case name in big, bold, blue letters. You should also see case information (case number, case type, status, etc.). You can check the case's status (answer, dismissed, scheduled, etc.).



Below the case information, you should see a horizontal row of tabs that include Case Parties, Judgments, Tax Map Information, Associated Cases, Actions, and Financials. To access the service date, click on the "Actions" tab. A list of actions should appear. If the service date is posted, the word "service" should be under the "Description" column. The result may also show "Service of RTV" or something similar, like proof of service or notice/notification of service.

Check the "Begin Date" column, and that date should be the date that the Rule to Vacate or Show Cause was served on the tenant. In the Index, you may also see a "Description" that shows the date the Rule to Vacate or Show Cause was mailed.

If the Public Index search yields unclear results for the date of service, caution the tenant that the tenant, unless the tenant is sure of when she was served with the Rule to Show Cause or Vacate, she should request a hearing as quickly as possible.

Please note that not every county posts a service date to the Public Index, but you can still search to see whether any information exists on the Public Index that can help the tenant. Additionally, you can walk the tenant through these steps so that the tenant can also use the Public Index.

USCA4 Appeal: 23-1917    Doc: 17    Filed: 11/06/2023    Pg: 67 of 246
Case 22-1345, Document 241, 03/01/2024, 3672854, Page32 of 33

2:23-cv-01121-DCN    Date Filed 03/21/23    Entry Number 1-1    Page 29 of 30

## Appendix 7 –Application for Ejectment

Below is a sample of a blank Application for Ejectment that a landlord would have to file with the magistrate.

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | CIVIL CASE NUMBER |
| COUNTY OF _____ ) | IN THE MAGISTRATE'S COURT |
| _____ ) | |
| PLAINTIFF(S) ) | APPLICATION FOR |
| VS. ) | EJECTMENT |
| ) | (Eviction) |
| _____ ) | |
| DEFENDANT(S) ) | |

I, _____, plaintiff in this action, state that I am the landlord-lessor of premises within the jurisdiction of Magistrate _____ which is described as: (address and description of premises – apartment, house, etc.)
_____

I further state that, with regard to the above-described premises, a landlord-tenant relationship exists between myself and the defendant, _____, the tenant-lessee, as evidenced by the following: (Attach lease papers or other written proof.)
_____

Grounds for this ejectment are one or more of the following:
☐ The tenant fails or refuses to pay the rent when due or when demanded in the amount of $ _____ ; or
☐ The term of tenancy or occupancy has ended; or
☐ The terms or conditions of the lease have been violated as follows:_____

| | |
|---|---|
| Sworn to before me ) | |
| this _____ day of _____ , 2 ___ . ) | |
| ) | |
| _____ ) | _____ |
| Magistrate or Notary Public for South Carolina ) | PLAINTIFF (or his attorney/agent) |
| ) | _____ |
| My Commission expires _____ ) | Address |
| ) | _____ |
| ) | City/State/Zip |
| ) | _____ |
| ) | Phone Number |

SCCA/732 (Amended 11/2019)

## Appendix 8 – Rule to Vacate or Show Cause

Below is a sample of a blank Rule to Vacate or Show Cause that legally notifies a tenant to vacate or request a hearing.

| | |
|---|---|
| STATE OF SOUTH CAROLINA          )<br>                                                )<br>COUNTY OF _____ ) | _____<br>CIVIL CASE NUMBER<br>IN THE MAGISTRATE'S COURT |
| _____  )<br>                   PLAINTIFF(S)    )<br>         VS.                                )<br>_____  )<br>                  DEFENDANT(S)   ) | RULE TO VACATE OR SHOW CAUSE<br>(Eviction) |

**TO [Defendant(s)]:** [Landlord] is asking this Court to evict you from the property located at _____, because they claim that:

☐ You have failed to pay rent when due or demanded in the amount of $_____.
☐ The terms of your tenancy or occupancy have ended.
☐ You have violated the terms or conditions of your lease by: _____
_____
_____

You, _____, the defendant and lessee of the premises listed above, and all others are ordered to vacate the premises immediately pursuant to S.C. Code Ann. §27-37-10 **OR** to contact Magistrate _____ located at _____, SC _____, PHONE: _____ within ten (10) days of receiving this notice, for the purpose of scheduling a hearing to show why you should not be evicted from these premises.

**FAILURE TO VACATE THE PREMISES OR RESPOND WITHIN TEN (10) DAYS MAY RESULT IN THE ISSUANCE OF A WRIT OF EJECTMENT.**

Dated: _____          _____
                                                                      **MAGISTRATE JUDGE**

Personally appeared before me, the undersigned deponent who, being duly sworn, says that s/he is a person over 18 years of age not a party or attorney in this action and that s/he attempted to serve the Rule to Vacate or Show Cause on [Defendant(s)] on the following dates/times:

| | DATE | TIME | INITIALS | |
|---|---|---|---|---|
| | | | | DATE OF SERVICE _____ |
| 1. | _____ | _____ | _____ | TIME OF SERVICE _____ |
| 2. | _____ | _____ | _____ | SETTLED/DATE _____ |
| 3. | _____ | _____ | _____ | VACANT/DATE _____ |

SWORN to and Subscribed before me
This _____ Day of _____ , _____

_____          _____
NOTARY PUBLIC OR JUDGE                              SIGNATURE OF SERVER

On _____, I deposited a copy of this document in the United States Mail in an envelope addressed to the Defendant(s) above with first class postage affixed thereto.

SCCA/733A (Amended 11/2019)