

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

January 14, 2025

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for
 the Second Circuit
40 Foley Square
New York, NY 10007

Re: *Upsolve, Inc. v. James*, No. 22-1345

Dear Ms. Wolfe:

The State writes under Rule 28(j) to alert the Court to *Polaski v. Lee*, No. 7:24-cv-4, 2024 WL 5121029 (E.D.N.C. Dec. 16, 2024), *appeal docketed*, No. 25-1038 (4th Cir.).

The facts in *Polaski* are materially identical to those here: the nonlawyer plaintiffs, who sought to render legal advice pertaining to the preparation of legal forms, challenged North Carolina's prohibition on the unauthorized practice of law under the First Amendment. *Id.* at *1-2. The district court dismissed the complaint for failure to state a claim. *Id.* at *2-4. The court's analysis tracks the State's position in this case.

First, the court concluded that attorney-licensing requirements are subject to no more than intermediate scrutiny because such laws "target[] conduct, not speech, as [they] regulate[] who may engage in the practice of law rather than what those engaged in the practice of law must or must not say." *Id.* at *3. See State Br. 41-52, 56-58; Reply 6-9, 14-20, 25-26; ECF 286.

Second, in refusing to apply strict scrutiny, the court specifically and correctly found the order on appeal in this case to be unpersuasive. 2024 WL 5121029, at *3. The court also distinguished *Holder v. Humanitarian Law Project*—correctly explaining that the statute in *Holder*, unlike an attorney-licensing requirement, regulated content rather than conduct. *Id.* See State Br. 50-52; Reply 9-13; ECF 186, 307.

Third, the *Polaski* court applied intermediate scrutiny and determined that the plaintiffs did not plausibly allege a First Amendment violation. 2024 WL 5121029, at *2, 4. The court explained that restricting the practice of law "to lawyers who have training, oversight, confidentiality restrictions, and against whom clients have recourse, plainly fits within the State's substantial interest in protecting its citizens." *Id.* at *4. And the court emphasized that while some jurisdictions may permit nonlawyers to provide limited legal services, such policy judgments are properly left to the political process. *Id.* See State Br. 58-69; Reply 26-33; ECF 186, 241.

*Polaski* illustrates that attorney-licensing requirements comport with the First Amendment. The preliminary injunction order in this case should be reversed because plaintiffs are unlikely to prevail on the merits.

                                      Respectfully submitted,

                                      */s/ Cleland B. Welton II*

                                      Cleland B. Welton II
                                      Assistant Solicitor General

cc (via CM/ECF): All counsel of record

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limit of Federal Rule of Appellate Procedure 28(j) because it contains 350 words.

*/s/ Cleland B. Welton II*
Cleland B. Welton II

2024 WL 5121029
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina.

MORAG BLACK POLASKI, SHAWANA ALMENDAREZ, and NORTH CAROLINA JUSTICE FOR ALL PROJECT, Plaintiffs,
v.
ERNIE LEE, in his official capacity as District Attorney for the 5th Prosecutorial District of the State of North Carolina; BENJAMIN R. DAVID, in his official capacity as District Attorney for the 6th Prosecutorial District of the State of North Carolina; NANCY LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina; ASHLIE SHANLEY, in her official capacity as District Attorney for the 25th Prosecutorial District of the State of North Carolina; SPENCER B. MERRIWEATHER III, in his official capacity as District Attorney for the 26th Prosecutorial District for the State of North Carolina; and A. TODD BROWN, in his official capacity as President of the North Carolina State Bar and Chair of the Executive Committee of the North Carolina State Bar, Defendants.

No. 7:24-CV-4-BO-BM
|
Filed 12/16/2024

### ORDER

TERRENCE W. BOYLE UNITED STATES DISTRICT JUDGE

 *1  This cause comes before the Court on defendants' joint motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have responded, defendants have replied, and a hearing on the motion was held before the undersigned on November 1, 2024, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion is granted.

### BACKGROUND

Plaintiffs are two North Carolina Certified Paralegals and a nonprofit organization dedicated to expanding access to justice in North Carolina, in particular to those North Carolinians who cannot afford a lawyer to represent them but earn too much to qualify for free legal assistance. Plaintiffs seek to provide simple legal advice to North Carolinians regarding completing common, court-related forms, such as those used for summary ejectments, absolute divorces, and protective orders. But North Carolina prohibits the unauthorized practice of law by anyone who is not an attorney. Plaintiffs now challenge North Carolina's unauthorized practice of law (UPL) statutes under the First Amendment to the United States Constitution, alleging that they impermissibly restrict speech, specifically legal advice.

Defendants, five North Carolina District Attorneys and the President of the State Bar, have moved to dismiss plaintiffs' First Amendment challenge. Defendants argue that the outcome of plaintiffs' First Amendment challenge is controlled by *Capital Associated Industries, Inc. v. Stein*, 922 F.3d 198 (4th Cir 2019), which held that North Carolina's UPL statutes regulate conduct with only an incidental impact on speech. The UPL statutes are thus evaluated under intermediate scrutiny, which defendants argue even at the pleadings stage demonstrates that plaintiffs' First Amendment challenges fail.

### DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).

In North Carolina, the General Assembly defines the practice of law, who may engage in the practice of law, and sets the consequences for the unauthorized practice of law. *See* N.C. Gen. Stat. §§ 84-2.1; 84-4; 84-5; 84-7; 84-37; *see also* Amd. Compl. ¶¶ 98-104; 111-113. The practice of law is defined as, *inter alia*, "performing any legal service for any other person, firm or corporation, with or without compensation" and "assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation." *Id.* § 84-2.1(a). District Attorneys are to seek to enjoin those who engage in the unauthorized practice of law and may further bring criminal charges against such persons or entities. *Id.* § 84-7. The State Bar may also investigate and enjoin the unauthorized practice of law. *Id.* § 84-37.

**\*2** Plaintiffs allege that they seek "to provide simple legal advice on a variety of court-created forms in family law, landlord-tenant law, and estate planning and probate services." Amd. Compl. ¶ 66. Plaintiffs seek to "go beyond basic legal information" when providing assistance to individuals filling out court-created forms, and specifically want to offer legal advice "tailored to the litigant's factual circumstances and legal goals." *Id.* 84-86. This legal advice and assistance would be provided for a fee, or without a fee by the Justice for All Project. *Id.* ¶¶ 89-91. Plaintiffs recognize that none of the UPL exceptions provided by state law permit them to give legal advice. *See* N.C. Gen. Stat. § 84-2.1; Amd. Compl. ¶¶ 114-116; *see also* Amd. Compl. ¶ 117 (describing circumstances under federal law where nonlawyers may provide advice or representation). Plaintiffs allege that, as they face the credible threat of prosecution by defendants should they provide legal advice in violation of North Carolina law, they have had to self-censor and refrain from providing beneficial legal advice to litigants, including friends and family. Plaintiffs allege that the credible threat of prosecution has chilled and silenced their pure legal speech in violation of the First Amendment. *Id.* 126-130.

Plaintiffs' complaint alleges two as-applied challenges to North Carolina's UPL statutes under the First Amendment: plaintiffs' right to provide free legal advice (Count I) and the individual plaintiffs' right to provide paid legal advice (Count II). Plaintiffs have limited their challenges "solely as applied to legal advice regarding court-created forms." *Id.* ¶¶ 141; 158. Plaintiffs allege that the First Amendment's Free Speech Clause protects their oral and written legal advice as it relates to these forms, and that North Carolina's UPL statutes, as they are applied to plaintiffs' legal advice, are content-based prohibitions of "pure speech." *Id.* 146-47; 163-64.

A. *Procedural posture*

The Court is considering plaintiffs' as-applied challenges at the pleadings stage. "In order to prevail on an as-applied First Amendment challenge, a plaintiff 'must show that the regulations are unconstitutional as applied to their particular speech activity.' " *Fusaro v. Howard*, 19 F.4th 357, 368 (4th Cir. 2021) (citation omitted). Typically, this is a fact-based inquiry. *Id.* As is discussed more fully below, however, because defendants are permitted to show that the challenged statutes satisfy the applicable level of scrutiny using common sense. and need not rely on specific evidence, the Court determines that disposition at the pleadings stage in this instance is appropriate. *See 360 Virtual Drone Servs. LLC v. Ritter*, 102 F.4th 263, 278 (4th Cir. 2024); *see also Brokamp v. James*, 66 F.4th 374, 406 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1095 (2024) (affirming dismissal of First Amendment challenge to mental health counselor licensing requirements and applying intermediate scrutiny to pleadings).

B. *Intermediate scrutiny applies*

The First Amendment, made applicable to the states by the Fourteenth Amendment, prohibits laws which abridge freedom of speech. U.S. Const. amend. I; *Billups v. City of Charleston, S.C.*, 961 F.3d 673, 682 (4th Cir. 2020).

> Laws that impinge upon speech receive different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it. On the one hand, regulations that discriminate against speech based on its content "are presumptively invalid," and courts usually "apply the most exacting scrutiny". On the other hand, "areas traditionally subject to government regulation," such as commercial speech and professional conduct, typically receive a lower level of review.

*Stuart v. Camnitz*. 774 F.3d 238, 244 (4th Cir. 2014) (cleaned up, citations omitted). The first step in considering a First Amendment challenge is thus to determine which level of scrutiny applies, and "the precedent of this [circuit] and the Supreme Court establish that professional regulations—like other regulations implicating speech—are subject to various levels of scrutiny, depending on their nature." *360 Virtual Drone*, 102 F.4th at 271.

Plaintiffs argue that the UPL laws regulate speech, not conduct; that they regulate speech based on its content; and that, as content-based restrictions on speech, the UPL laws are subject to strict scrutiny. Strict scrutiny means that North Carolina's UPL statutes regulating legal advice would survive only if they are "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley,* 573 U.S. 464, 478 (2014).

**\*3** Recently, however, the Fourth Circuit determined that North Carolina's UPL statute which prohibits the corporate practice of law is "a regulation of professional conduct that incidentally burdens speech, which only needs to survive intermediate scrutiny." *Cap. Associated Indus., Inc. v. Stein,* 922 F.3d 198, 207 (4th Cir. 2019) (hereinafter *"CAI"*) (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 585 U.S. 755, 768 (2018) (hereinafter *"NIFLA")*. The *CAI* court addressed precisely the issue presented by plaintiffs here - whether in North Carolina giving legal advice should be viewed as "speech as speech," and thus subject to strict scrutiny - and held

> The UPL statutes don't target the communicative aspects of practicing law, such as the advice lawyers may give to clients. Instead, they focus more broadly on the question of who may conduct themselves as a lawyer. Licensing laws inevitably have some effect on the speech of those who are not (or cannot be) licensed. But that effect is merely incidental to the primary objective of regulating the conduct of the profession.

*Id.* at 208. The *CAI* court did not, as plaintiffs contend, apply the professional speech doctrine that the Supreme Court rejected in *NIFLA;* the *CAI* court considered and applied *NIFLA* and nonetheless reached the conclusion above.

The Fourth Circuit also later examined and reaffirmed the *CAI* decision, holding that where an "Act is a regulation of professional conduct that only incidentally impacts speech, ... [this circuit] appl[ies] a more relaxed form of intermediate scrutiny that mandates only that the restriction be 'sufficiently drawn' to protect a substantial state interest." *360 Virtual Drone,* 102 F.4th at 271. Defendants thus need only show a "reasonable fit" between the UPL statutes and North Carolina's substantial interests. *Id.* at 279.

The Court has been presented with no argument which convinces it that the circuit court's treatment of the UPL statute at issue in *CAI* is somehow distinguishable from the UPL statutes at issue here. As in *CAI*, the targeted UPL statutes "involve[ ] a classic regulation of conduct with an incidental burden on speech: the law prohibit[s] certain entities from offering legal services or advice (speech that has economic and legal consequences), and ha[s] no readily apparent implications for unpopular or dissenting speech." *360 Virtual Drone,* 102 F.4th at 275; *see also id.* at 272-276 (discussing guideposts to be used in drawing line between speech and conduct). Plaintiffs do not challenge the UPL statutes because they are prohibited by them from providing a certain type of legal advice or a specific message; rather, they challenge the UPL statutes because they are prevented from giving any legal advice at all because they are not lawyers. Just as in *CAI*, this regulation targets conduct, not speech, as it regulates who may engage in the practice of law rather than what those engaged in the practice of law must or must not say. *Compare Stuart,* 774 F.3d at 253 (law which compels physician to deliver state's preferred message "treads ... heavily on the physicians' free speech rights").

Plaintiffs argue that the Court should rely on *Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010), and apply strict scrutiny, but again their argument is not persuasive. In *Humanitarian Law Project*, the Supreme Court held, in a challenge to a law prohibiting providing material support to terrorists, that the statute at issue regulated content, such as providing specialized training on the use of international law, not conduct. *Id.* 561 U.S. at 28 ("the law here may be described as directed at conduct, ... but as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message."). But, as described in both *CAI* and *360 Virtual Drone*, the starting point of the analysis in this case is that states have long held the authority to license professionals and regulate their practice. *See CAI,* 922 F.3d at 207-208. *Humanitarian Law Project* simply did not implicate these concerns. Plaintiffs further rely on *Upsolve, Inc. v. James,* 604 F. Supp. 3d 97, 114 (S.D.N.Y. 2022), which applied *Humanitarian Law Project* to conclude that providing legal advice was speech, not conduct, and considered the challenged UPL statute using strict scrutiny. *Upsolve* is not binding on this Court, nor is it persuasive in light of *CAI.*

C. *The challenged statutes satisfy intermediate scrutiny*

**\*4** *CAI* held that the UPL statute prohibiting the corporate practice of law satisfies relaxed intermediate scrutiny. The same is true here. First, "North Carolina's interest in regulating the legal profession to protect clients is at least substantial." *CAI*, 922 F.3d at 209. Second, there is a "reasonable fit" between prohibiting nonlawyers from giving legal advice and North Carolina's regulation of the legal profession in order to protect its citizens.

Restricting the practice of law, including the provision of legal advice, to lawyers who have training, oversight, confidentiality restrictions, and against whom clients have recourse, plainly fits within the State's substantial interest in protecting its citizens. *See CAI*, 922 F.3d at 209 (noting that professional integrity may suffer if state permits corporate practice of law). North Carolina attorneys are also governed by the Rules of Professional Conduct, which imposes, *inter alia*, duties of competence and loyalty and requires attorneys to avoid conflicts of interests. N.C. R. Prof'l Conduct r. 1.1; 1.7-1.13. Plaintiffs would not be governed by these rules, and, although they allege they want to provide only "simple legal advice," they also seek to provide advice in circumstances which can have wide-reaching effects, such as child custody matters.

Moreover, the restriction on the provision of legal advice does not prevent plaintiffs from sharing and distributing legal information. *See* Amd. Compl. Ex. B at 4 ("Generalized legal statements and opinions, not tailored to any specific or particular situation, do not constitute the unauthorized practice of law."). Paralegals may also assist clients with filling out forms, provided there is appropriate supervision by an attorney. Amd. Compl. ¶¶ 60, 77. In other words, North Carolina has struck a balance between limiting the practice of law and provision of legal advice to licensed attorneys and recognizing that paralegals are well-equipped to assist in the delivery of legal services. Plaintiffs argue that other jurisdictions have adopted different approaches and allow paralegals to provide additional services directly to clients. Plaintiffs also note their own efforts in trying to persuade the North Carolina General Assembly to do the same. That "[a]nother state legislature might balance the interests differently" does not mean that the balance struck by North Carolina runs afoul of the First Amendment. *CAI*, 922 F.3d at 209. North Carolina's current limits on the practice of law and the provision of legal advice reasonably fit within its interest in regulating the legal profession.

In sum, plaintiffs spend the majority of their brief arguing that the Court should apply strict scrutiny to the UPL statutes and that in order to do so the case must proceed to summary judgment. The court of appeals has considered substantially similar First Amendment challenges and arguments in *CAI* and *360 Virtual Drone*, and this Court has been presented with no persuasive argument that those cases do not control the outcome here. Further, though *CAI* and *360 Virtual Drone* were both decided at summary judgment, the *360 Virtual Drone* court made plain that evidence is *not* needed to determine whether a state's professional regulation which only incidentally impacts speech survives intermediate scrutiny, and thus the Court can decide this case at the 12(b)(6) stage.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' joint motion to dismiss [DE 30] is GRANTED.

**\*5** The complaint is DISMISSED in its entirety.

The clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this 13 day of December 2024.

**All Citations**

Slip Copy, 2024 WL 5121029

---

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.